KROY, Adm'x, v. THE CHICAGO, R. I. & P. R. R. Co.

| 32 | 357 |
|----|-----|
| 82 | 184 |
| 32 | 357 |
| 127 | 23 |
| 32 | 357 |
| f132 | 733 |
| 32 | 357 |
| 143 | 120 |

1. Master and servant; RAILROAD: WAIVER OF DEFECTS AND DANGEROUS CUSTOMS: CONTRIBUTORY NEGLIGENCE. The rule recognized, that if an employee knows that another employee is habitually negligent, or that the materials with which he works are defective, and he continues his work without objection and without being induced by his employer to believe that a change will be made, he will be deemed to have assumed the risk and cannot recover for an injury resulting therefrom.

2. —— So if the injury complained of was contributed to by his own negligence.

3. —— Where it was the habit upon the railroad where plaintiff's decedent was employed to uncouple the engine from the freight train at a certain station while the train was in motion, and the decedent had, without protest or objection, contributed to the establishment of this custom, and its performance generally devolved upon, and, in the particular instance, was voluntarily assumed by him, it was *held*, that the railroad company was not liable in an action by his administrator to recover damages on account of his being killed while in the performance of this customary act.

*Appeal from Scott District Court.*

WEDNESDAY, OCTOBER 4.

CLAUS KROY was in the employ of defendant as a brakeman, and, as is claimed, while in the discharge of his duty, and in the exercise of ordinary care, was killed by the care-

lessness and negligence of defendant. Plaintiff, the administratrix, sues for the injury to the estate. Jury trial. Verdict and judgment for plaintiff for $3,000. Motion for new trial overruled. Defendant appeals. The necessary facts are stated in the opinion.

*Cook & Browning* for the appellant.

*Geo. E. Hubbell* and *Bills & Block* for the appellee.

Day, Ch. J.—I. The point first presented, and mainly insisted upon by appellant, is, that the verdict is not supported by the evidence.

There is but little conflict in the testimony bearing upon the principal points in the case. In discussing the question under consideration we shall regard every material fact affecting the liability of defendant, to which the testimony is directed, as proved. Thus considered, the testimony establishes the following facts :

In December, 1868, Claus Kroy was head brakeman on a freight train of defendant, in which employment he had been engaged three or four months. His position was in the forward cars, and sometimes, in extremely cold weather, he occupied the engine. Upon the night of the accident, as the westward bound train, consisting of twenty cars, with a caboose on the rear end, approached within a mile and a half of Atalissa station, at the rate of fourteen miles an hour, the deceased, who was riding on the engine, asked the engineer if he should pull the pin attaching the locomotive to the train. The engineer said he thought not ; deceased replied that if they did not they would be late getting home; the engineer said that they had better be late getting home than to hinder the passenger train any. After a short time deceased again asked if he should not pull the pin. The engineer directed him to wait till they got around in full view of the station. When the

train came in view of the station, and it was discovered that the passenger train was not in sight, deceased, a third time, asked if he should not pull the pin, and the engineer said: "Well, go ahead." The night was fair, starlight, with no moon, and not extremely cold. Deceased proceeded with a lantern, for the purpose of uncoupling the train, while the same was in motion, and two-thirds of a mile from the station. It is necessary that a brakeman uncoupling a train in motion should put one foot on the ladder at one side of the end of the car, or on the "dead wood," a stick of timber three or four inches wide, fastened to the end of the car over the BUNTER, and, holding on with one hand, reach down and pull the pin with the other. There is more danger in uncoupling a train in motion than when still. Deceased succeeded in pulling the pin, and was not afterward seen upon the train, but a short time thereafter was found lying upon the track, at about the point where the train was uncoupled, dead, and badly mangled. It is not necessary to uncouple cars in motion, but there are no rules or orders of the company to stop a train before uncoupling, a discretion in that matter being left to the train men. Upon the train in question the train men, of whom defendant was one, had established a custom of uncoupling the train at Atalissa station, while in motion. This was almost always done. The engineer expected Kroy to uncouple here every night, and, without asking the conductor, unless he was forbidden to do so. Uncoupling in such manner was a matter of convenience to all parties. It relieved the brakeman from the necessity of getting down from the train and passing between it and the locomotive. The engine could stop easier and better at the tank without than with the train attached, and, if the train stopped for the purpose of uncoupling, sometimes the pin would become fastened, rendering it necessary to move the train back and forth to loosen it.

The engineer refused to permit Kroy to uncouple the

train when he first desired to do so, in consequence of not being near enough to see whether the passenger train was at the depot. At the time of the accident the conductor was on the caboose car. The brakeman is under the charge of the conductor. The engineer has no authority to send a brakeman to pull a pin when in motion although, if he directed him to do so, he would expect him to obey, and, if he refused to do so, would report him to the conductor. Under the rules of the company the general direction and government of the train is vested in the conductor, but the engineer is held alike accountable for any violation of the general rules of the company.

These are the material facts established by the evidence.

At common law, the master is liable to his servant for injuries resulting from his neglect to use ordinary care and diligence to provide sound and safe materials and accommodations, and to employ servants of sufficient care and skill to make it probable that they will not, by the lack of those qualities, cause injury to each other. But a master is not liable to his servant for the negligence of a fellow servant, while engaged in the same common employment, unless he has been negligent in his selection of the servant in fault, or in retaining him after notice of the incompetency. Sherm. and Redf. on Negligence, §§ 86, 90, 92, and cases cited. This rule of the common law was modified by section 7, chapter 169, Laws Ninth General Assembly, which provides: "Every railroad company shall be liable for all damages sustained by any person, including employees of the company, in consequence of any neglect of the agents or by any mismanagement of the engineers or other employees of the corporation to any person sustaining such damage." This statute received judicial construction in the case of *Hunt* v. *Chicago and North Western R. Co.*, 26 Iowa, 363, in which it was held that the statute imposes the same liability upon a railroad company for injuries to a servant, resulting from the negli-

Kroy v. The Chicago, R. I. & P. R. R. Co.

gent act of a fellow servant, as the common law before imposed upon the master for an injury to a servant, the result of the master's negligent act, and hence, that under the statute the company was liable to a servant for such injuries only as were the result of a failure upon the part of a fellow servant to exercise reasonable and ordinary care. It will be thus seen that a much lower degree of responsibility rests upon the company for an injury to an employee than for a like injury to a passenger.

Another important modification of the liability of a master for an injury to an employee, which is sustained by an almost unbroken current of authority in this country and in England, is, that if a servant knows that a fellow servant is habitually negligent, or that the materials with which he works are defective, and continues his work without objecting, and without being induced by his master to believe that a change will be made, he is deemed to have assumed the risk of such defects. This rule finds its support in the reason that the continuance of the servant in the employment of his master is purely voluntary, and if he so continues without objection, with knowledge of defects in machinery or the incompetency of his co-employees, he is presumed to have waived the right to insist upon indemnity for injuries resulting from such incompetency and defects. Sherm. and Redf. on Negligence, § 94, and cases cited.

It is scarcely necessary to allude to the elemental doctrine that one cannot recover for an injury which is the proximate result of his own failure to exercise ordinary care. An application of these principles to the facts of the case at bar will, we think, render it apparent that they do not justify the verdict and judgment rendered in the court below. The deceased had been employed upon this train for three or four months, during which time the almost unvarying habit had been to detach the locomotive from the train, at Atalissa station, while in motion. And,

as he occupied a position upon the forward cars, this duty devolved upon him. Yet so far was he from protesting against this course, and requesting its abandonment by the company, that he voluntarily assumed the performance of this act, and, by his active co-operation, contributed to the establishing of the custom. Not only so, but upon the particular occasion of the injury, he three times requested to be permitted to draw the pin, and assigned as a reason for desiring to do so, that otherwise they would be late getting home. Upon this branch of the case we desire to quote the appropriate language of the supreme court of Ohio, in the case of the *Mad River and Lake Erie R. R. Co.* v. *Barber*. BARTLY, C. J., delivering the opinion of the court, said: "It appears that a principal is liable in damages for an injury sustained by an agent or employee while in his service, only where the injury is the result of an omission of that reasonable and ordinary care on the part of the principal himself, in the discharge of his duty, which persons of ordinary prudence are presumed to exercise in that particular pursuit. Where, therefore, an agent or employee of a railroad company has been injured by means of the neglect of ordinary diligence and care on the part of the company, either in not employing a sufficient number of hands to manage and safely run a train, or in employing, or continuing in the employment of the company, incompetent and unsuitable persons, or in not keeping the road in proper repair, or in providing the road with insufficient, defective and unsafe machinery and cars; in either case, the company is liable.

"But the company would not be liable even in any such case, providing the agent or employee, with a 'full knowledge of such omission of duty or neglect on the part of the company, waive the matter by continuing in the service of the company, without taking the precaution, or using his exertions, to have the omission or difficulty remedied. For if the agent or employee of the company

waive the omission of duty on the part of the company, he takes the risk upon himself, and, if damaged, he must abide by the maxim, *Volenti non fit injuria.*" 5 Ohio St. 562.

And in the same case it is declared to be "an old and settled rule of the common law, that no one can maintain an action for a wrong where he has consented or contributed to the act which has occasioned it."

Substantially the same principle is recognized by this court in *Greenleaf, admr.,* v. *Illinois Central R. R. Co.,* 29 Iowa, 14, Western Jurist, vol. 4, p. 284, in which WRIGHT, J., delivering the opinion of the court, says: "Then, too, if thus cold, it was no part of his duty to *voluntarily* undertake to make the switch. In doing so he would be guilty of such negligence or want of care as, *prima facie,* would defeat a recovery; and especially so in view of the snow and ice on the car." It does not appear but that this train was properly equipped and furnished with a suitable number of skillful and competent trainmen. Nor does it appear but that all were at their proper places and engaged in the discharge of their appropriate duties. The only negligent act complained of is the permitting of the brakeman to undertake to uncouple the train while the same was in motion.

Now, if this act be conceded to be negligent, the facts clearly show that the custom was established by the cooperation and consent of the deceased, for his own convenience as well as that of the other train men.

Having lent his aid to establish such a course of business, and afterward, without complaint or protest, continued in the defendant's employ, he must be presumed to have taken upon himself all the risks incident to the conduct of the business in the manner which he assisted to establish. Our attention has been directed to no adjudication in which a recovery has been had under circumstances similar to those of this case. The cases cited by appellee do not

support the plaintiff's right of recovery. In the case of *Vose* v. *The Lancashire and Yorkshire R. R. Co.*, 2 Hurl. & Norm. 728, in which it was held that a railway company was liable for an injury resulting from defective rules for the conduct of its business, the person injured was not a servant of the defendant. In the case of *The Little Miami R. R. Co.* v. *John Stevens*, Stevens, the engineer, sustained an injury in consequence of the failure of the company or of the conductor to furnish the engineer a card showing a change made in the place for the passing of trains, whereby a collision occurred. No negligence was attributed to the plaintiff. It was held that the company's negligence entitled him to recover. In the case of the *Mad River and Lake Erie R. R. Co.* v. *Barber*, the conductor of the train was injured through the neglect of the company to supply the train with a sufficient number of hands for its safe and proper management, and through a defect in the brake. The court denied his right to recover, and held, as to the deficiency in the number of hands, that it was the duty of the conductor to notify the company of the want of sufficient hands, and to require the company to furnish them, and that, so far as the deficiency in the number of hands contributed to the injury, the maxim, *volenti non fit injuria* applies. And with reference to the defect in the brake, the court held this language: "It was the duty of Barber, as the conductor of this train, to use ordinary and reasonable skill and diligence on his part, not simply in the management of the train but also in supervising the due inspection of the cars, machinery, and apparatus, as to their sufficiency and safety while under his charge; and on the discovery of any defect or insufficiency, to notify the company, and to take the proper precautions to guard against danger therefrom. And if he was injured by the negligence of the company in furnishing, or continuing to use defective cars and machinery, yet if his own neglect

of duty in the management of the train, or due inspection
of the cars and machinery in his charge contributed as a
proximate cause of the injury, he could have no right of
action against the company for damages; or if he knew
of the defects and insufficiency of the cars and machinery,
and, without taking the necessary and proper precaution to
guard against danger, continued to use them, he took upon
himself the risk, and waived his right as against the com-
pany." 5 Ohio St. 565.

So far is this case from sustaining the plaintiff's right of
action, that it very strongly supports the view which we
have endeavored to maintain in this opinion. In the case
of the *Cleveland and Columbus and Cincinnati Railroad
Company* v. *Keay*, the plaintiff, a brakeman, was injured,
as he proved, through the carelessness and negligence of
the conductor, to whose order, by the rules and regula-
tions of the company, he was subject. No contributory
negligence was attributed to plaintiff. The only question
presented was, whether the company was liable for the
negligence of the conductor. The company was held so
liable. It is needless to say that that determination does
not bear upon the principal question here involved. Our
attention is directed to section 96 of Shearman & Redfield
on Negligence, in which the authors, commenting on the
doctrine of waiver, say: "It must be admitted that this
doctrine has been sometimes pushed too far, and the mere
continuance of a servant in his work has been treated as
conclusive evidence of his having waived objections to de-
fects in his associates or his materials." And these rulings
are characterized as "unjust, because a servant has the
same right to complete his contract in reliance upon its
original terms that any one else has. It is to be observed
that the doctrine here condemned differs essentially from
that maintained in the opinion. If a servant, by a mere
continuance in the employment of his master, should be
held to have *conclusively* waived objections to defects in

his materials or in his associates, he could not, to rebut the consequences of such implied waiver, show that he had called the attention of his master to the defects, protested against their continuance, or required their removal. We fully concur, with the learned authors of the work referred to, in the opinion that such doctrine is "unjust." The view which meets their approval is, that "the dependent position of servants generally makes it reasonable to hold any notice on their part sufficient, however timid and hesitating, so long as it plainly conveys to the master the idea that a defect exists, and that they desire its removal." It is believed that nothing is contained herein at variance with this doctrine, or with the general text of the above named valuable work. Without further discussion of this branch of the case, the facts disclosed lead us irresistibly to the conclusion that they do not, under the law, establish the plaintiff's right to relief.

In reaching this conclusion we do not ignore the provisions of the statute.

If the deceased had not himself contributed to the establishing of the custom, and remained in defendant's employ with knowledge of its existence without complaint or protest, and voluntarily taken upon himself the particular act which occasioned his death, our conclusion would be different.

II. The instructions of the court need not be considered in detail. Except in so far as they fail to advise the jury of the effect of Kroy's contributing to establish the custom of uncoupling the train while in motion, and of his continuing in the employ of the company for several months, with knowledge of this custom, yielding to its requirements without protest or dissent, they seem to us to present a fair exposition of the law.

For the reasons before assigned the court erred, in our opinion, in overruling the motion for a new trial.

Reversed.