MULDOWNEY, admx., v. ILL. CENT. RY. Co.

1. **Negligence**: CONTRIBUTORY NEGLIGENCE. The reasonable belief of a party that he will not sustain an injury in doing acts which, but for such belief, would be negligent, does not exonerate him from the charge of negligence.

Muldowney v. Illinois Central Railway Co.

2. **Damages:** IN ACTION FOR PERSONAL INJURIES. Where, after commencing an action to recover for injuries sustained, the plaintiff dies, and his administrator is substituted, he may, as such, recover the amount due his decedent at the time suit was brought, including compensation for his bodily pain and suffering.

|    |     |
|----|-----|
| 36 | 462 |
| 122 | 232 |
| 123 | 728 |
| 36 | 462 |
| 127 | 23 |

3. —— In such action the plaintiff may recover for every thing which was a proper charge against him, and which he was obliged to pay in consequence of the injury, including nursing and use of the house which afforded him shelter.

4. **Railroad:** INJURIES TO EMPLOYEES. It is the duty of a railroad company to exercise reasonable and ordinary care to provide safe and suitable machinery, and it will not be discharged from liability for defects which reasonable and ordinary diligence would have discovered, though it in fact was ignorant of such defects.

5. —— An employee is not under like obligation to resort to means for the discovery of defects. He has a right to presume that his employer has done his duty and complied with the law; hence it is only when he has knowledge of defects in machinery which he continues to use without objection that he is presumed to have waived the defect. It is his *knowledge* and not his *means* of *knowledge* that affects his right to recover.

6. **Evidence:** OPINION OF EXPERTS. Brakemen, baggage-masters, and conductors are not competent to give their opinion as experts respecting the coupling of cars, and as to the danger a brakeman would incur by attempting to make a coupling under certain circumstances.

7. —— GENERAL RULE. When the subject so far partakes of the nature of a science or trade as to require a previous course of study or habit in order to the attainment of a knowledge of it, opinions of experts are admissible.

8. —— On the other hand, if the relation of facts and their probable result can be determined without especial skill or study, the facts themselves must be given, and the jury left to draw conclusions or inferences.

*Appeal from Dubuque District Court.*

TUESDAY, JUNE 4.

THIS action was instituted by Edward Laughlin, in his lifetime, to recover damages for injuries sustained by the alleged negligence of defendant.

After his decease, the administratrix of his estate was substituted as plaintiff, and the cause continued in her name. The decease was in the employ of defendant as brakeman

and baggage-master. A part of his duty was to assist in coupling the cars and in making up the trains. On the 9th of September, 1868, at Ackly, on defendant's road, while attempting to couple two loaded freight cars to the mail car, he was crushed by the bumper of the mail car overriding that of the freight car, and permitting the platforms to come in contact, of which injury he died on the 9th of May, following.

The bumper of the mail car was higher than that of the freight car, so that the perpendicular impinging surface was from two to two and one-half inches, and it was necessary to use a three-link coupling in attaching the cars. Jury trial. Verdict and judgment for plaintiff for $10,000. Defendant appeals. The facts are stated in the opinion.

*Crane & Rood* and *Shiras, Van Duzee & Henderson* for the appellant, cited *Tooney* v. *R. R. Co.*, 91 Com. Law, 146; *Cornman* v. *R. R. Co.*, 4 H. & N. 781; *Welfare* v. *R. R. Co.*, Law Rep., 4 Q. B. 693. To same effect see *Butterfield* v. *R. R. Co.*, 10 Allen, 533; *Dego* v. *R. R. Co.*, 34 N. Y. 1; *Beaulien* v. *Portland Co.*, 48 Me. 296; *Lehman* v. *Brooklyn*, 29 Barb. 234; *Smith* v. *R. R. Co.*, 37 Mo. 287; *Bairch* v. *Oakley*, 68 Penn. St. 92; *McAunick* v. *R. R. Co.*, 20 Iowa, 345; *Miller* v. *Ins. Co.*, June term, 1872; *Wilds* v. *R. R. Co.*, 24 N. Y. 430; *Burns* v. *R. R. Co.*, 101 Mass. 51; *Button* v. *R. R. Co.*, 18 N. Y. 248; *Fox* v. *Glastenburg*, 29 Conn. 204; *Railroad Company* v. *Henderson*, 43 Penn. St. 449; *Baxter* v. *R. R. Co.*, 41 N. Y. 502; *Havens* v. *R. R. Co.*, id. 296; see also 39 id. 61 and 366; *R. R. Co.* v. *McClurg*, 56 Penn. St. 294; *R. R. Co.* v. *Rutherford*, 29 Ind. 82; *Todd* v. *R. R. Co.*, 3 Allen, 22; *R. R. Co.* v. *Barber*, 5 Ohio St. 541; *Kroy* v. *R. R. Co.*, June term, 1871; *Moss* v. *Johnson*, 22 Ill. 642; *Jewell* v. *R. R. Co.*, 46 id. 99; *Hayden* v. *Manuf. Co.*, 29 Conn. 548; *McMillan* v. *R. R. Co.*, 20 Barb. 454; *Loonan* v. *Brockway*, 3 Rob. 74; *McGlynn* v. *Broderic*, 31 Cal. 376; *R. R. Co.* v. *Winn*, 19 Ga. 440; *Moore* v. *R. R. Co.*, 4 Zab. 368; *Runyon* v. *R. R. Co.*, 1 Dutch. 556.

Muldowney v. Illinois Central Railway Co.

*Adams & Robinson* and *T. S. Wilson* for the appellee.

DAY J. — Evidence was introduced tending to show that the two freight cars, detached from the locomotive, were moving from east to west, down a grade of forty-five feet to the mile, at an unusual speed, three or four miles an hour, and that, in order to effect a coupling in safety, they should not move at the rate of over one mile per hour.

<div style="margin-left:2em;">1. NEGLIGENCE: contributory negligence.</div>

That Laughlin, who was in charge of the moving cars, got down from them and ran rapidly to get in ahead of them in order to make the coupling when they should come in contact with the standing cars.

That the moving cars struck those standing upon the track, which were three in number, with such force that they were moved west from fifty to seventy-five feet. The defendant asked the court to instruct the jury as follows:

" If you find from the evidence that the two moving freight cars were detatched from the locomotive, that the said Laughlin was upon said cars in charge thereof, as they moved down toward the express car; that he got therefrom upon the ground permitting said cars to move at an unusual rate of speed, with no one thereon to check and regulate their speed, and while they were thus running at an unusual rate, attempted to couple them to said express car, and in consequence thereof, was caught between said cars and injured, then he was guilty of negligence contributory to the injury complained of, and your verdict should be for the defendant."

The court added to this instruction the following: "Unless you find from the evidence that said Laughlin had reason to believe that he would be sufficiently protected by the bumpers upon the cars, and in case you find such to be the fact, then your verdict should be for the plaintiff," and incorporated the instruction, thus qualified, into the charge to the jury.

The defendant excepted, and assigns the giving of this instruction as error. The instruction, as given, presents for our consideration the following question: Does the reasonable

belief of a party that he will not sustain an injury in doing acts which, but for such belief, would be negligent, as matter of law, exonerate him from the charge of negligence in the doing of such acts? Or, in other words, may a person recover for injuries sustained, notwithstanding his negligence, if he had reason to believe that he might do the acts constituting the negligence, without sustaining injury? Or, still differently expressed, does the belief of a party, however well founded, as matter of law, determine the negligent or careful character of his acts? We know of no precedent or principle for imposing upon the doctrine of negligence such a qualification.

It happens, perhaps, in a majority of cases, that acts confessedly rash, imprudent, and negligent are not attended by injury.

When given circumstances, in a majority of cases, are productive of certain results, and hence are more likely than not to produce such results, an individual, knowing these facts, has good reason, based upon experience, to believe that in a particular instance like circumstances will produce a like result.

A man may, without injury, leap from a railroad train moving at the rate of twenty-five miles an hour. One who had performed this feat twenty times in safety, would have good reason to believe that he could do the same thing again, and, yet, if in the twenty-first essay, he should break his limb or his neck, every one would say that he had acted rashly and imprudently.

Of the persons who ride upon the platforms of passenger cars, in violation of the regulations of the company, or pass from car to car whilst the trains are in motion, probably not one in a hundred sustains any injury. Yet both acts, it has been held, constitute negligence. Shearman & Redfield on Negligence, §§ 284 and 285, and cases cited.

No one would deny that a man who had safely done these acts a hundred times would have reason to believe that he could accomplish them again. And yet, if he should fail,

Muldowney v. Illinois Central Railway Co.

his act would be not the less negligent in consequence of his belief.

These illustrations show clearly, it seems to us, the error of the court's instruction. The fact of the exercise of ordinary care must appear, before a plaintiff can recover for the negligence of another resulting in his injury. If he act negligently, he cannot recover, notwithstanding he may have a belief, and a belief reasonable in its character, that such negligence will not result in his injury.

A person riding upon the platform of a car may have been protected a hundred times from falling, by the railing, and thus he may have come to believe implicitly, and not without reason, in its ability to protect him.

His belief, under such circumstances, would be exactly like the plaintiff's belief that the bumpers would sufficiently protect him. If the belief, in the case supposed, does not relieve from the consequences of negligence, we are unable to see how it can do so in the case at bar.

The twenty-second instruction of the court contained the same qualification as the one we have been considering, and is vulnerable to a like objection. We do not hold that all the circumstances attending an act, including the number of times a like act has been done without injury, may not be taken into consideration by the jury, in determining the fact whether a party in a particular instance was careful or negligent. What we do decide is, that in such cases the belief of a party does not determine the quality of his acts.

In the foregoing views the chief justice does not concur. There is another view, which, though not urged by counsel, leads to the same conclusion. In very many cases, of which this is one, the law furnishes no better definition of negligence than that it is the want of such care as men of ordinary prudence would use under similar circumstances. This presents a question of fact as to what men of this character usually do under such circumstances. And upon this question of fact the jury have a right to pass.

The instruction asked by the defendant groups together a

number of distinct facts, and acts, and the court is asked to tell the jury that if the defendant did these acts, and these facts existed, then the defendant was guilty of negligence. In other words, the court is asked to charge as a matter of law, that, under the circumstances named, a man of ordinary prudence would not act in a particular manner; whereas, whether he would so act or not, is not a question of law for the court, but a question of fact for the jury. Thus the court was asked to invade the domain of the jury, and he might, without error, have refused to give the instruction altogether.

The court, however, grouped all these circumstances together, and told the jury, in effect, that a man of ordinary prudence, under the circumstances named, would do the acts specified, if he had reason to believe he would be protected by the bumpers.

This is as erroneous as it would have been to have given the instruction as asked. Shearman & Redfield on Negligence, § 11, and cases cited.

II. The court, in substance, instructed the jury that the plaintiff is entitled to recover the amount which was due Laughlin at the time suit was brought, including compensation for bodily pain and mental anguish. In this appellant insists the court erred. In our opinion the instruction is right. The action was commenced by Laughlin. If he had survived till after the trial, his bodily pain and mental suffering would have constituted proper elements of damage.

*2. DAMAGES: for personal injuries.*

His administratrix succeeded to the cause of action as it existed at the time of his death, and can, it seems to us, recover just such damages as he would have been entitled to if he had survived.

A different rule would maintain if the action had been commenced, after his death, for the benefit of his estate. *Donaldson* v. *The Mississippi & Missouri R. R. Co.*, 18 Iowa, 288. In this case the administratrix is substituted as plaintiff, and claims the damage which Laughlin, the deceased, sustained in consequence of the injury.

III. The court instructed the jury that in determining the damage to which plaintiff might be entitled they should estimate the reasonable expenses incurred by Laughlin for care and nursing rendered necessary by the injury, and that in determining what became due from Laughlin for care and nursing they should include a reasonable compensation for the use of the house which afforded him shelter.

It is objected to this, that it was not proper for the jury to give compensation for the use of a house. The instruction, however, we think, under the circumstances of this case was right. It was shown that his injury rendered him so offensive that it was difficult to remain in the room with him. Any one nursing him would be entitled to include as an element of the charge therefor a reasonable allowance for the room occupied by him. And if this became a proper charge against him, which he was obliged to pay in consequence of the injury, he should recover therefor from the defendant.

Another objection, however, is urged to the charge respecting nursing, care, and use of house, which seems to be well taken. There was no evidence of the value of any of these items. The jury, therefore, had no data from which to put an estimate upon them.

IV. It is objected that the court erred in refusing to give the second, third, fifth and eleventh instructions asked by defendant.

The substance of the second instruction is as follows: So far as Laughlin was concerned the defendant had a legal right to conduct its business in its own way, and was 4. RAILROAD: injuries to employees. under no obligation to furnish cars of any particular construction, or with any particular appliances for the safety or convenience of the brakeman or baggageman, unless it knowingly exposed him to unreasonable risks of which he was ignorant.

The objection to this instruction is that it exonerates defendant from liability for injuries resulting from unsafe or improper machinery, unless it *knowingly* exposes its employees to danger therefrom, whereas, the true rule is that it

is the duty of defendant to exercise reasonable and ordinary care to provide safe and suitable machinery, and the defendant is not discharged from liability for defects which reasonable and ordinary diligence would have discovered. *Kroy* v. *C., R. I. & P. R. R. Co.*, 32 Iowa, 357 (2 E. 360); Shearman & Redfield on Negligence, 392, and cases cited.

The third instruction is as follows: "The law does not impose upon the defendant the duty to use cars with bumpers of the same height, and hence the mere fact that the cars which caused the injury to Edward Laughlin had bumpers of different heights will not alone authorize you to find defendant guilty of negligence in using said cars." This instruction is objectionable because of its tendency to mislead.

It is true that the law does not impose upon defendant the duty of using cars with bumpers of the same height. But it does require defendant to use ordinary care to provide bumpers so nearly of the same height that they will accomplish the purpose for which they are intended, and, under ordinary circumstances, and with proper care, prevent the cars from coming in contact.

Whether the cars in question were furnished with bumpers of such construction is a question of fact. The jury could not properly be told, as a matter of law, that the mere fact that the bumpers were of different heights, would not authorize them in finding the defendant guilty of negligence. This depends entirely upon the extent of the difference between the heights of the bumpers. A slight mismatchment would constitute no negligence, whilst the use of cars in which the bumpers did not at all come in contact, or but slightly impinged, might constitute very gross negligence.

The sixth instruction asked is as follows: "When the employee has the same knowledge or means of knowledge of the defects or imperfections in the machinery or cars about or upon which he is employed as his employer has, and does not object thereto, he cannot sustain an action for an injury caused by such defects or imperfections, but will be held to have incurred all the risks of the employment incident to the

use of such defective cars or machinery; hence, if you find from the evidence that the injury to said Laughlin was caused by the bumpers of said cars being of different heights, while he was attempting to couple said cars, then he was chargeable with knowledge of the fact that said bumpers were of different heights, and your verdict must be for defendants."

This instruction does not fairly or correctly reflect the law. The defendant, as we have seen, is liable for injuries resulting from defective machinery furnished an employee, even when it is ignorant of such defect, if it might have discovered it by the exercise of ordinary care. It is the duty of the employer to exercise reasonable care to furnish safe machinery and to discover defects therein. But the employee is not under like obligation to resort to means for the discovery of defects. He has a right to presume that his employer has done his duty, and complied with the requirements of the law. And it is only when he has knowledge of defects in the machinery which he *is required to use*, and continues *to* use them without objection, that he is presumed to waive the defect. *Roy* v. *C., R. I. & P. R. R. Co.*, 32 Iowa, 357.

It is not true, then, that the plaintiff's right of recovery is defeated, by the use of machinery without objection, when he has simply the same means of knowledge of defects therein as his employer.

Of course, the situation of the plaintiff and his means of knowledge may be proven in order to enable the jury to determine the fact of his knowledge of the condition of the machinery with which he works.

But it is his *knowledge*, and not his *means of knowledge*, which affects his right to recover.

A further objection to this instruction is that the last clause of it charges plaintiff with knowledge of the condition of the bumpers, from the fact alone, that they were of different heights.

The eleventh instruction asked is vulnerable to the same objection, and needs no separate notice. There was no error in refusing to give these several instructions.

V. The plaintiff offered the depositions of various witnesses who had been brakemen, baggage-masters and conductors upon railroads, and who testified, among other things, as follows:

**6. EVIDENCE:** opinions of experts.

Q. If the drawheads or bumpers are properly matched, state whether there is danger of one overriding the other? A. There is not.

Q. If the drawheads are properly matched, state what danger there is of the person being crushed between the cars while making the coupling? A. There is no danger.

Q. If the drawheads are properly matched, state what danger, if any, is incurred in making the coupling on the first approach, if the moving cars are moving at the rate of three or four miles an hour, or as fast as a man briskly walks? A. There is no danger.

Q. Suppose the moving cars to be two box cars cut off from the engine, and moving on a slightly descending grade toward the stationary cars at the rate of three or four miles an hour, or as fast as a man briskly walks, and suppose that the brakeman, who is making up the train, is riding at first on the top of the moving cars, and when the same have approached within a few rods of the stationary cars, suppose he jumps down and passes in front and walks briskly ahead of the moving cars on the track toward the stationary cars, and on reaching the stationary cars, stops and stands in front of them, and awaits the approach of the moving cars for the purpose of making the coupling in the usual manner, state what danger, if any, such brakeman would incur by standing in such position, if the drawheads or bumpers were properly matched, and the cars were properly constructed in other respects? A. I don't think he would be in any danger at all.

Defendant objected to the testimony, at the time the depositions were offered, on the ground of incompetency and irrelevancy. The objection was overruled, and defendant excepted.

In general, witnesses can depose only as to *facts* within their knowledge. But on questions of science, skill or trade, and others of like kind, persons of skill, called experts, are

permitted to give their opinions in evidence. It is often very difficult to determine in regard to what particular matters and points witnesses may give testimony, by way of opinion. It is doubtful whether all the cases can be harmonized, or brought within any general rule or principle.

The most comprehensive and accurate rule upon the subject we believe to be as follows: That the opinion of witnesses possessing peculiar skill is admissible, whenever the subject-matter of inquiry is such, that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, without such assistance; in other words, when it so far partakes of the nature of a science, as to require a course of previous habit or study, in order to the attainment of a knowledge of it; and that the opinions of witnesses cannot be received, when the inquiry is into a subject-matter, the nature of which is not such as to require any peculiar habits or study, in order to qualify a man to understand it. 1 Greenl. on Ev. (12th ed.), § 440, note 3; 1 Smith's Lead. Cas. 286.

If the relations of facts and their probable results can be determined without especial skill or study, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury.

Tested by foregoing principles, we think the matters referred to in the above testimony are not proper subjects of opinion. The juror of ordinary intelligence would have no difficulty in determining, where two bodies come squarely in contact in the same plane, whether one would likely override the other.

So, also, if the construction of the cars, the position and area of the impinging surface of the bumpers, the speed with which the cars come in contact, and the position of the brakeman whilst making the coupling are shown, it needs no especial skill or study to tell what danger the brakeman would incur by attempting to make the coupling. See *Hamilton* v. *Des Moines Valley Ry. Co.*, December term, 1872.

The other questions discussed need not be considered.

Reversed.