| 39 | 615 |
|----|-----|
| 81 | 391 |
| 39 | 615 |
| 82 | 184 |
| 39 | 615 |
| 83 | 625 |
| 39 | 615 |
| 102 | 510 |
| 39 | 615 |
| 107 | 78 |
| 107 | 668 |
| 107 | 716 |
| 39 | 615 |
| 113 | 117 |
| 39 | 615 |
| 129 | 253 |
| 39 | 615 |
| 131 | 739 |
| 39 | 615 |
| 143 | 19 |

## MULDOWNEY v. THE ILLINOIS CENTRAL R. CO.

1. **Railroads**: CONTRIBUTORY NEGLIGENCE. A brakeman, while proceeding to couple cars in motion, was warned by the bystanders that the attempt would be perilous to his safety, and, disregarding the warning, received injuries for which his administrator sought to recover. It was *held*, that a disregard of the warning, where circumstances showed that the duty would be one of imminent danger from causes apparent in the exercise of ordinary care, would constitute contributory negligence and defeat a recovery.

2. ———: NEGLIGENCE: WAIVER. An employe who knows, or by the exercise of ordinary diligence, could know of any defects or imperfections in the cars or machinery about which he is employed, and continues in the service without objection, is presumed to have assumed all the consequences resulting from such defects, and to have waived all right to recover for injuries caused thereby.

3. ———: WHAT CONSTITUTES CONTRIBUTORY NEGLIGENCE. A brakeman who, by the exercise of ordinary care, had the power to regulate the speed of approaching cars, cannot recover for an accident of which his failure to check the rate of speed was wholly or in part the proximate cause. His own negligence would defeat his recovery.

4. **Evidence**: TESTIMONY OF EXPERTS. An expert cannot give his opinion respecting ultimate facts. His conclusions are competent only when based upon facts testified to by himself or by others, and should be excluded when based upon a hypothesis which has no foundation in the evidence.

### *Appeal from Dubuque Circuit Court.*

### FRIDAY, OCTOBER 23.

THIS action was originally brought by Edward Laughlin, May 8, 1869, to recover for injuries resulting to him September 9, 1868, while engaged in coupling cars for the defendant. The said Edward Laughlin died May 13, 1869, and the suit was revived by substituting the administratrix as plaintiff. An amended petition was filed, wherein the plaintiff claims to recover twenty-five thousand dollars because of the injuries to and death of the said Laughlin, which are alleged to have resulted from the defendant's negligence, and without Laughlin's negligence or fault. The defendant denies negligence on its part, and that deceased was not negligent, and avers that the death resulted from Laughlin's imprudence and disregard of the directions of his physicians. Jury trial. Verdict and judgment for plaintiff for $7,665. The defendant appeals.

*Crane & Rood* and *Shiras, Van Duzee & Henderson*, for appellant.

*Adams & Robinson, T. S. Wilson* and *W. J. Knight*, for appellee.

COLE, J.—A brief statement of the facts which the evidence tends to, and does very satisfactorily, establish, will render the points ruled more clear and certain. The deceased was brakeman and baggage-master for the defendant at the time of the accident, and had been for a year or two preced-

ing, and was both faithful and skillful in his employment. At about six o'clock on the morning of September 9, 1868, a mixed train on which deceased was employed, arrived at Ackley, on its way east; two loaded freight cars were at that station, and were to be attached to this train; in the discharge of his duty, the deceased went to switch the two freight cars from the side track, and couple them to the train; the baggage or express car, to which the freight cars were to be coupled, was left on the main track together with two passenger cars to which it was attached, while the engine, tender, etc., went east to the switch, and thence back upon the side track for the freight cars; from the switch west, to where the baggage and passenger cars were left standing, the grade was considerably descending; as the two freight cars were hauled, by the engine, up to the switch, placed upon the main track and started west towards the train, the deceased undertook alone to break them down and couple them to the train; the deceased was riding them down, and was at the break on the east end of the freight cars; by reason of the impetus from the engine and the descending grade, the freight cars were moving too rapidly to couple with safety; the deceased, without checking their speed by the break, or so setting it as to operate as a further break, got down from the freight cars while they were moving at the rate of four or more miles per hour, ran or walked rapidly to and in front of them towards the train, for the purpose of coupling them to the baggage car or train; while he was thus walking or running in front, and was about to couple them, he was warned by two or more persons connected with the train, not to attempt to couple them for it was dangerous, the cars were moving so·fast; the deceased disregarded the warnings, and attempted to couple the cars, but they came together with such force that, the breaks of the train being set, the bumper of the baggage car overrode that of the freight car, and the deceased was seriously jammed and injured; the bumper of the baggage car was higher than that of the freight car, so that only about two and a half inches of their faces came in contact; all baggage, express and passenger cars are made higher than freight cars;

the deceased had been accustomed to use the same baggage car, and the same kind of freight cars; three kinds of coupling were used on the road—a straight link for bumpers of equal height, a crooked or S. link for bumpers of slightly unequal height, and a three-link coupling for bumpers of greater inequality of height; a three-link coupling was put in the baggage car (probably by the deceased, since the other employes on the train testify that they did not do it) before starting to switch the cars on the main track and couple them; directly after the injury Laughlin was taken from between the cars, and medical care and treatment promptly furnished; he gradually improved for four days, and then, contrary to the advice of both his physicians, he went on a train to Dunleith, and became a little worse; after a few days he went to Dubuque to consult a physician, who prescribed for him, and, in accord with the others, directed that he should keep very quiet; he improved for a few days, and then returned to his Dubuque physician again, who told him that it was as necessary as ever for him to keep quiet; this injunction he did not obey, and on November 5, 1868, when his Dubuque physician was called to see him, he found him in bed, with his wounds worse, and he continued to grow worse and suffered intensely from that time to May 13, 1869, when he died; his condition became very repulsive, and for months the care of him was loathsome and onerous; he was a little over twenty-two years of age when he died.

The defendant asked the court to give to the jury the following instruction, which the court refused, to-wit: "If you 1. RAILROADS: find from the evidence that at the time said contributory negligence. Laughlin attempted to make the coupling he was warned by bystanders that such attempt was imperiling his safety, and that such warning was sufficient to call his attention to the danger threatening him, and was in season to afford him an opportunity to avoid said danger, and that, notwithstanding such warning, he attempted to make such coupling and was injured; and that the making of said coupling was unusually dangerous in consequence of any cause which was then and there open to view, and could with ordinary

care have been seen by him, then he was guilty of contributory negligence, and your verdict should be for the defendant."

The counsel for appellee do not controvert the correctness of this instruction, but they claim, first, that there was no evidence upon which to base it, and hence it was not error to refuse it. If their claim as to the evidence was not a mistaken one, their conclusion would be unquestionably correct. But by reference to the preceding summary of the evidence, it will be seen that the instruction was peculiarly well moulded to it, and would justify, if it would not require, the finding by the jury of every fact which it recites. But, secondly, they claim that the instruction is covered by the third, fourth and tenth given by the court. Neither of those instructions, however, refers to the fact of the warning given deceased by others, nor do they present to the mind of the jury, even remotely, the precise questions of fact presented by this instruction. We need not copy the instructions referred to. The third states the abstract legal proposition, that to entitle plaintiff to recover, he must prove that the injury was caused by the defendant's negligence, and that negligence by the deceased did not contribute to it. The fourth, that negligence in law is the omission to do something which a reasonable, prudent man would do, or the doing of something which such a man would not do. The tenth tells the jury that the deceased had the right to presume that the defendant was not using cars with bumpers mismatched, unless he knew, or by ordinary care might have known, otherwise. Each is but an abstract proposition of law, and the last, in the way it is stated to the jury, is of doubtful correctness. They do not cover the ground of the instruction asked and refused. Such refusal was, therefore, error.

The defendant also asked the court to give to the jury the following instruction, which was refused: "4. When an

2. ——: employe has knowledge, or has the means of
negligence:
waiver. acquiring knowledge by the exercise of ordinary care and diligence, of the defects or imperfections in the machinery or cars about or upon which he is employed, and

continues in his employer's service without objecting to, or protesting against the use of such defective or imperfect cars or machinery, he will be held to have assumed all the risks incident to the use of the cars and machinery in such defective condition; hence, if you find from the evidence that said Laughlin knew, or by the exercise of ordinary care and prudence would have known, in time to avoid injury, the alleged defects in or about said cars and the bumpers thereof, and of the dangers of attempting to couple them at the rate of speed they were then moving, then to attempt the coupling was contributory negligence, and the plaintiff cannot recover in this action."

The tenth instruction given had, as before stated, told the jury that Laughlin had the right to presume that the company was not using cars with bumpers mismatcheed, " unless he had actual knowledge that they were mismatched, or unless he would have observed such fact in the exercise of ordinary care." Now this fourth instruction asked and refused is but the counterpart of the tenth, so given by the court. That is to say, if Laughlin did have knowledge of the mismatching or defect, or by the exercise of ordinary care and diligence would have known it, then the presumption which the tenth instruction told the jury the law raised, would be overcome. The means of knowing by ordinary care is evidence of knowledge.

Having given the tenth, it was but fair and proper to give the fourth asked, in order that the jury might have the law upon both hypotheses and fully. The doctrine of the fourth instruction was recognized by this court in *Kroy v. The C., R. I. & P. R. R. Co.*, 32 Iowa, 357; and it was there said that it " is sustained by an almost unbroken current of authority in this country and in England." See the following cited cases: *Priestly v. Fowler*, 3 M. & W., 1; *Seymour v. Maddox*, 5 Eng. L. & Eq., 260; *Dynen v. Leuch*, 40 Ib., 491; *Griffiths v. Gidlow*, 3 H. & N., 648; *Potts v. Plunkett*, (2 B. Ireland), 7 Am. L. Reg. (O. S.), 562; *Wilkinson v. Fairrie*, 1 H. & C., 633; *Wright v. The N. Y. C. R. R. Co.*, 2. N. Y., 566, (*ubi* too broadly stated); *McMillan v. The S. & W. R. R. Co.*, 20 Barb., 453; *Hayden v. The Smithville

*M'f'g Co.*, 29 Conn., 548; *Buzzell v. The M'f'g Co.*, 48 Me., 121; *Moss v. Johnson*, 22 Ill., 642; *Frazier v. The Penn. R. R. Co.*, 38 Penn. St., 104; *Loonam v. Brockway*, 3 Robertson, 74; *Fifield v. The Northern R. R. Co.*, 42 N. H., 240; *Coombs v. Cordage*, 102 Mass., 585; *Hugh v. The Railroad Co.*, 6 Lou. Ann., 495; *McGlynn v. Brodie*, 31 Cal., 376; see also S. & R. on Neg., 94; Pierce on R'ys, 297, and 2 Hill. on Torts, 467. See, also, *Greenleaf v. The Ill. Cent. R'y Co.*, 32 Iowa, 46.

When this case was last before us, (see 36 Iowa, 462) an instruction apparently similar to this, but which was, nevertheless, materially different in that it wholly omitted the important element of ordinary care, was held to have been properly refused. The addition of that element and the giving of the tenth instruction by the court, required the giving of this instruction, and rendered its refusal error.

The peculiar pertinency of this doctrine to this case is seen, when it is remembered that the evidence, without conflict, shows that all baggage, express or passenger cars are made higher than freight cars, and that deceased had been for a year or two on the road, and used the same car often, and was skillful.

The defendant also asked the court to instruct the jury as follows, which was refused, viz: " If you find from the evidence

8. ——: ——: that said cars moved down to the express car, what consti- tutes contrib- where the coupling was to be made, at an unusual utory negli- gence. and improper rate of speed, that said Laughlin had the power or means (by the use of ordinary care) of regulating or giving to them the usual and proper rate of speed; and that his failure or neglect so to regulate their speed was, in whole or in part, the proximate cause of the accident complained of, then the plaintiff cannot recover in this action; and the burden of showing that said cars moved down at the usual and proper speed is upon the plaintiff." The words, " by the use of ordinary care," included in the parenthesis above, were not in the instruction as asked, and for this reason, it is possible that its refusal was not error; but as above it might be given.

The seventh instruction asked and refused should have been given; it is as follows: "7. If you find from the evidence that said Laughlin was upon the moving cars which he attempted to couple after they were detached from the loco-motive, and that said cars were provided with a sufficient brake, then it was his duty to so regulate their speed that the coupling he attempted to make could be made with ordinary safety; and if he failed to so regulate their speed, and such failure was the proximate cause, in whole or in part, of the accident that produced the injury complained of, then your verdict must be for the defendant."

There were several medical witnesses who testified as to the character and extent of the injuries, the treatment and care or want of it by Laughlin himself. The plaintiff read, in closing the testimony, the deposition of a medical witness taken in behalf of plaintiff. One interrog-atory, duly excepted to by defendant, was as follows: "7. Do you think that with different, or in the exercise of greater, care he would probably have recovered? Ans. The treatment and care of Laughlin was, in my opinion, prudent. I believe a change in either would not have produced any different result." This question and answer put the witness in the place of the jury, to determine the ultimate fact, and it was, therefore, error to admit them. The witness might properly state what facts he knew respecting the treatment and care, and then give his medical opinion upon such facts; or he might be asked his opinion upon an assumed state of facts which the testimony of the other witnesses tended to establish. But such a question as asked was improper, because the wit-ness might base his opinion upon facts which he assumed, but which the jury might not find, or which had no existence in the case. A medical man's opinion is very competent when the facts upon which it is based are testified to by him-self, or by others; but his opinion, without the facts, is not competent, because he is not authorized to find or assume the facts at his pleasure,—they are to be found by the jury, and if they do not exist as he assumes them, his opinion may go for naught. The same objection applies to interroga-

*4. EVIDENCE: expert testimony.*

tories six, eight, ten, and thirteen. Each should have been excluded.

It is claimed that the verdict is not sustained by the evidence, and we are asked to pass upon this point. Since the judgment must be reversed for other reasons, it might be as well to leave this point untouched. But it may be of importance to both parties upon another trial, that we intimate the light in which the case now appears to us. The fidelity and boldness of the deceased cannot fail to excite the admiration and sympathy of judges as well as jury. But his very boldness which attracts applause, and would surely have won for him great success in life, had he been spared, may, in the law, constitute barriers to his recovery, since boldness is the opposite, almost, of care, upon which the law proceeds.

Two alleged negligent acts caused the injury. One, the mismatching of the bumpers; the other, the too great speed of the cars to be coupled. The first is chargeable to the defendants, and the last to the plaintiff's intestate. The testimony, without conflict, shows that all baggage, express and passenger cars are invariably made higher than freight cars, and this for a controlling reason—the comfort of passengers. When freight cars are loaded the discrepancy in height is increased by the settling of the springs. How this mismatching of bumpers, which comes from invariable construction and natural causes, can be called negligence, is, at least, a little inexplicable. While, if the speed of the cars on coming together was too great, and could have been controlled by using ordinary care, negligence is its proper name.

REVERSED.