FORDYCE v. LOWMAN.

Opinion delivered February 15, 1896.

EVIDENCE—EXPERT TESTIMONY.—Expert testimony is inadmissible on the question whether a brakeman assumed the risk of riding on a flat car pushed in front of an engine.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

*J. M. & J. G. Taylor* and *S. H. West* for appellant.

1. The court erred in admitting improper testimony. The questions asked and answers by McCool and others were improper and incompetent. The jury were as competent to judge of the methods and circumstances as experts. The facts only should have been put in evidence, and the jury left to draw their own conclusions. 63 Fed. 797; 40 Iowa, 345; 36 Ia. 462, 472; 36 *id.* 473; 1 Gr. Ev. (12 Ed.) 440; 36 Ia. 37; 56 Ark. 612; 1 Wharton, Ev. 512.

2. It was error to limit the questions submitted to the jury to the two mentioned by the court, viz: (1) Was it negligence on the part of the company to push flat cars ahead of the engine? and (2), was there contributory negligence on the part of the deceased? The prominent thing in the trial was that, notwithstanding the custom of pushing flat cars in front was improper and negligent, yet, knowing all these circumstances, Lowman voluntarily accepted such service, and *thereby assumed all the risks thereof.* 68 Fed. Rep. 632; 113 Mass. 396; *ib.* 544; 11 Allen, 312; Wood on Railroads, p. 744, note 1, 2 and 3, etc; 53 Ark. 117: 393; 58 *id.* 175; 54 N. J. L. 411; 62 Mo. 232.

3. The presumption is that Lowman contracted with reference to this custom. The complaint does not

negative this idea, and it must prevail until overthrown by proof. 63 Iowa, 569; 31 A. & E. R. Cas. 255. Knowing these dangers before the accident, and in time to have avoided them, Lowman must be held to have assumed them. 63 Iowa, 562; 125 Mass. 82; 63 N. Y. 452; 88 N. Y. 264; 122 U. S. 195; Bailey, Mast. Liab. for Inj. etc. pp. 170, 191. Even though he had no knowledge when he entered the service, yet, after becoming aware of them, he remains in the service, the servant assumes the risks. Wood, Mast. & Serv. p. 793 and note; 71 Mo. 160; Bailey, Mast. Liab. etc., p. 160. See also 57 Ark. 232, which governs this case. 53 Am. & Eng. R. Cas. 370; *id.* 372; 156 Mass. 200; 162 *id.* 556; 139 *id.* 587; 140 *id.* 152; 117 Ind. 265; 38 Am. & Eng. R. Cas. 222, and note.

*N. T. White, H. King White* and *W. T. Wooldridge* for appellee.

1. The same evidence objected to was introduced in the former trial, and the objections were passed on in the former appeal. If inadmissible, the court would have said so. But the evidence clearly shows that these witnesses were competent to testify as experts. 25 S. W. 911; 26 *id.* 232; *id.* 686; 21 *id.* 737; 57 Ark. 519.

2. The instructions given by the court are sustained by opinion in the former case. 57 Ark. 162. See also 18 S. W. 977; 76 Pa. St. 389; 1 Sh. & Redf. Neg. secs. 211, 212; 128 U. S. 94; 60 Ark. 438.

BATTLE, J. This is the second time this cause has been before this court for consideration. When it was here before, the judgment of the circuit court, which tried it the first time, was reversed, and it was remanded for a new trial. *Fordyce* v. *Lowman*, 57 Ark. 160. Upon its return to the circuit court, the issues were tried again; plaintiff recovered judgment; and the defendants appealed.

Appellants now contend that the judgment from which they have appealed should be set aside because the court permitted appellee to introduce incompetent testimony in the last trial over their objections. To render the testimony objected to more intelligible, it is necessary to state that "this action was brought to recover damages alleged to have been occasioned by the death of Samuel Lowman," the appellee's intestate, who was killed by a derailment of the train on which he was acting, at the time, as a brakeman, in the employment of appellants. This occurred while he was making his first trip over appellants' road after his employment. At the time the accident occurred, the locomotive of the train was pushing ahead of it some flat cars, which were found on the main track after it had gone some distance on the trip; and the deceased, in discharge of the duties of the place he was employed to fill,—that is to say, of first brakeman,—was riding on these flat cars. To prove that he thereby incurred risks which he did not anticipate and assume when he was employed, the following answers of witnesses to questions propounded to them were admitted, over objections of the appellants, as evidence:

"Q. Would you [McCool] consider it a part of the anticipated duties of a brakeman, who hired to go upon a train, that, during the progress of his journey, he would find flat cars standing on the main track, which his train was expected to pick up, and carry them ahead of the engine?

"A. No, I shouldn't think it was. I shouldn't think he would anticipate such a thing at all, being a man who had considerable experience in railroading.

"Q. What would you say about finding cars? Was it proper railroading, or was it negligent railroading?

"A. It was contrary to all rules and regulations of railroading, and you don't find it on any well-disciplined road. You don't find it on the main tracks. Of

course, branches are governed by the same rules main lines are.

"Q. In going on a mixed passenger and freight train, what would he expect?

"A. A railroad man would not expect to find cars on the track in front of his engine.

"Q. Would he ride cars in front of his engine?

"A. He wouldn't expect it at all without being told. If I was to go out on the road today, I would not expect to find cars on the main track."

"Q. If you [Fortune] were employed by the Cotton Belt Railroad to run from Pine Bluff to Little Rock on the Altheimer Branch, on a freight train, would you expect to find on the main line five or six flat cars to push ahead of the train to a side-track?

"A. I would not expect to find any.

"Q. Then, understanding the duties of a brakeman, you say you would not expect to find anything of that kind?

"A. No. sir.

＊　　＊　　＊　　＊　　＊　　＊

"Q. What would you say to the jury as to the kind of railroading it would be, leaving five or six flat cars on the main track to be pushed ahead of the engine on the side-track?

"A. Such a thing as that is unknown in railroading, and I never heard of it in all my life until I heard of it on the Altheimer Branch. Sometimes cars will get away. It happened while I was a switchman in Texas. Five cars got away from us. Somebody would have found them there. That was the extent of them there. The idea of pulling cars out, and leaving them there,— there is no railroading in it."

Appellee says this evidence was introduced in the former trial, and was objected to by appellants, and that the objections to it were presented to this court in the

former appeal.    The evidence referred to was to the effect that riding on flat cars in front of an engine is more dangerous than it is on cars in rear of it, or than it is on a train without any cars in front of the engine. Nothing was said by this court as to its admissibility in the former trial.    Why, we know not, unless it was considered not to be prejudicial.    But we are not concluded by this silence in deciding the question now presented.    The evidence objected to in the two trials was entirely different.    In the former, it was adduced to show which of the two positions is the more dangerous; and in the latter, that the deceased brakeman did not assume, by his employment, the risk he incurred when riding on the flat car in front of the engine.

The opinions of experts are admitted as evidence for the sole purpose of aiding the court or jury to understand questions which inexperienced persons are not likely to decide correctly without such assistance. When the subject-matter of inquiry before a court requires special experience or knowledge to comprehend, they are admissible for that purpose, but are not when the inquiry is into a subject which a man of ordinary intelligence and experience in the affairs of life can understand, as in that case the assistance is not needed. *Brown* v. *State*, 55 Ark. 593; *Muldowney* v. *Illinois Central R. Co.* 36 Iowa, 472.

Let us apply the rule to this case.    When Lowman undertook to perform the duties of brakeman, he assumed only those risks which were ordinarily incident to his employment, or of which he had knowledge or notice that he would incur.    Now, to determine whether the risk he incurred by riding on the flat cars was assumed by him, it was necessary to ascertain whether he would have incurred it in the discharge of his duties on the train he was employed, had it been run as it would be on railroads operated in the ordinary and usual

manner.  If it was running, when he was injured, according to the rules and regulations or practices usually adopted or observed by railroad companies in the operations of such trains, or he knew, or ought to have known, or had notice, at the time he entered the service of appellants, that he would incur the risks he did, then he assumed it; otherwise, he did not.  To determine this question, no special experience, knowledge, study, or skill is required.  All that was necessary to enable a jury to decide it correctly was proof of all the facts that shed light upon the subject.  The opinions of experts were unnecessary for that purpose.  It therefore follows that the testimony objected to should have been excluded, and that the court erred in admitting it.

But we do not mean to hold that an employee cannot assume risks after his employment.  He can do so expressly, or by continuing in the employment after he becomes fully aware of the additional risk, without promise of the master, or reason to expect, that it will be removed or diminished.  But this rule is not without modifications.  This court held, on the first appeal in this case, that the employee, Lowman, did not assume the additional risk by continuing in the service of his master "when he was called upon, in an emergency, to perform the duties assigned him."  It was thought that the emergency, if it existed, relieved him of the assumption of the additional risk.  But sufficient has been said upon this point in the first opinion.

For the error indicated, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.