CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. GEORGE E. GIFFEN, A MINOR, BY ALBERT W. GIFFEN, HIS NEXT FRIEND.

FILED OCTOBER 7, 1903.   No. 12,808.

1. **Railroad: USE OF RIGHT OF WAY BY LICENSEE.** The proprietor of an elevator, built upon the right of way of a railroad company by permission of the company, is a licensee upon the premises and must operate his elevator loading cars therefrom, subject to the right of the company to handle its trains and use the track for switching purposes in the ordinary and usual way of doing such work.

2. **Negligence: QUESTION FOR JURY.** The plaintiff, an employee of an elevator, was filling a car with grain when interrupted by the switching operations of a freight train that arrived at the station during his work. The partly filled car was moved easterly along the track, and finally returned to the elevator and left standing, with two other cars attached and to the west of the partly filled car. The brakeman in charge asked the plaintiff if the car was placed in the right position to be filled, and plaintiff replied that it was not but was as nearly right as they could place it, and that he would "pinch" it into position with a crowbar. The plaintiff then uncoupled the partly filled car from the one standing west of it, climbed to the top of the car and loosened the brake. While on the car, he looked for the engine and saw it, with some cars

attached, going west on the switch track, the engine then being about to enter upon the main track. Supposing that the crew had finished the work of switching, plaintiff descended from the car, took a crowbar and went between the partly filled car and the car standing to the west of it, and commenced the work of "pinching" said car into position to be filled from the elevator spout. While so engaged, another car was shunted or "kicked" upon the side-track with such force as to drive the two cars standing on the track, west of the car at which plaintiff was working, up against the plaintiff, and driving the crowbar which he was using through his thigh. *Held*, That the question of negligence on the part of the company was a question for the jury.

ERROR to the district court for Fillmore county: GEORGE W. STUBBS, JUDGE. *Affirmed.*

*J. W. Deweese* and *Frank Elmer Bishop,* for plaintiff in error.

*F. B. Donisthorpe, contra.*

DUFFIE, C.

Giffen, the plaintiff below, was employed in an elevator in the town of Grafton, Nebraska. There are two elevators on the railroad right of way, Giffen being employed in the west elevator. The facts upon which he claims to recover, omitting the formal allegations, are as follows:

"That on or about the 27th day of July, 1901, and for a long time prior thereto, plaintiff had been working in said west elevator at a salary of $35 a month, and on said day there were standing on said sidetrack at said elevator three cars, one of which plaintiff was loading with grain, the other two standing west of said loaded car and being empty; that while said plaintiff was loading said car one of defendant's engines, pulling several freight cars, proceeded west of said depot on defendant's main line and backed on to said switch going to the east elevator for some purpose unknown to plaintiff; that in so going the said three cars as above mentioned were pushed toward said east elevator; that after the purpose had been accomplished for which defendant's engine and cars had been

pushed to said east elevator the said engine proceeded west, pulling the two empty cars and the car almost loaded as aforesaid back to the west elevator trying to leave the loaded car in the position it occupied before being moved east; that after said three cars were so brought to said west elevator one of defendant's brakemen uncoupled the said three cars form the balance of the freight train when said freight train proceeded west; that plaintiff discovering that said loaded car as aforesaid was not occupying a position where the loading of the same could be finished, went to the top of the loaded car, the brake having been put on by one of the defendant's brakemen, and threw off the brake, expecting that by so doing the car would move a little to the east, the grade inclining toward the east; that while plaintiff was still on top of said car he saw that said engine and the cars attached thereto were proceeding west to the main track and plaintiff, being satisfied that the switching by said engine for said time was through, descended to the ground and finding that said loaded car did not move far enough east, took a crowbar and commenced to apply the same to one of the wheels of said loaded car, thereby trying to move the same; that while plaintiff was so engaged defendant's brakeman, whose name is unknown to plaintiff, in connection with said freight train, discovering that a loaded car in connection therewith should also have been cut off and left on said sidetrack, accordingly notified the engineer of said train of said fact and while plaintiff was engaged in trying to move said loaded car with said crowbar and without any notice whatever of said change of plans being conveyed to him, without any of defendant's brakemen or agents in any way giving notice to said plaintiff, the said engineer with gross negligence and extreme carelessness and without giving any signal either by whistle, bell or in any other way, caused said engine to 'kick' said loaded car back on to said switch without said car having any person or persons controlling its movements, and it was sent with such force that as it struck said two empty cars they struck plaintiff on his back

whereby said crowbar he was using in front of him was driven completely through the following muscles of plaintiff's left thigh, to wit: Gracilis, adductor magnus, semimembranosus, semitendinosus, biceps and the glutæus maximus."

Damage was claimed in the sum of $3,000. Judgment went in favor of the plaintiff for $1,000, and the defendant has taken error to this court. From the foregoing extract from the petition, it will be seen that the action is based wholly upon the fact that the plaintiff believed that the train crew in charge of defendant's train had finished the work of switching and were about to proceed upon their way west. Acting upon this belief, he entered between two of the cars left upon the side-track and was injured in the manner stated in the petition by another car of the train being switched upon the side-track and "kicked" against the cars behind him.

The right of the plaintiff to recover and to avoid the charge of contributory negligence, does not depend solely upon his own belief that it was safe to enter between the cars for the purpose of "pinching" one of them into the position desired, but the question is, was this belief derived from acts and declarations of the servants of the plaintiff in error upon which he might rely and which, in the judgment of the jury, would justify a reasonably prudent man to act as he did? As stated in *Muldowney v. Illinois C. R. Co.*, 36 Ia. 462:

"The reasonable belief of a party that he will not sustain an injury in doing acts which, but for such belief, would be negligent, does not exonerate him from the charge of negligence."

The evidence discloses a state of facts which we think made it a question for the jury to say whether or not Giffen was negligent in going between the cars. Prior to doing so the switching crew had "spotted" the car which Giffen had been filling from the elevator. This, as we understand it, means that the car was placed as nearly in position to be filled from the elevator as could conveniently

be done by the use of the engine.  At this time the following conversation took place between Giffen and the brakeman in charge:

Q. Tell us what he (the brakeman) said.

A. He asked me if the car was at the place I wanted it, and if the car was right.  I told him "No" and said that "it is about as near right as you can get it."  He says, "Shall I back up?"  I said, "No, I will pinch it with a crowbar."  He says, "All right," and went to the other end of the train and I noticed the train push on out west.

Q. Where did you notice it from?

A. When I got up on the car I see the train going out just heading on to the main track.

We think that the act of spotting the car and the inquiry by the brakeman, if it was properly placed, indicated that the train crew was through with its work of switching, so far at least as not to further interfere with the car which Giffen was filling, and that Giffen, by telling the brakeman that he would "pinch" it into the exact position wanted with a crowbar, gave notice to the crew that he understood that they would not further interfere with the car, and that he himself would enter between the cars and pinch it into position, thus giving them warning that he was about to occupy the dangerous position that he did under the belief that he was not to be further interfered with in his work and calling upon them to give him notice if in the further work of switching it was necessary to move the car or to back other cars against it in such manner as to endanger him.  It is true, as argued by the company, that the owner of the elevator and his employees had a right upon the railroad ground at the elevator as licensees only, and that being mere licensees they undertook to do their work of loading cars at the elevator subject to the right of the company to handle its trains, and use the track for switching purposes; that the company had the first and primary right as against them to do all the work necessary in setting in or backing up cars on this side-track, whether the cars were moved by the direct movement of the engine

or whether they adopted the mode of "kicking" such cars onto the side-track.  This right the company had exercised by moving the car which Giffen was filling from the elevator back and forth upon the side-track as the work of switching required, and then, as is usual in such cases, it had attempted to replace the car at the elevator from which it was being filled.  In the language of the switching crew they had "spotted it" and we think that this act, together with what passed between Giffen and the brakeman in charge, was sufficient to support a finding that the company's employes had said to him in effect:

"Our work does not further require us to interfere with this car, and you may safely proceed to 'pinch' it into position and resume your work of filling it."

The employees of the company knew as well as Giffen that the work of pinching the car into position required Giffen to enter between the cars where he could neither see nor be seen, and under such circumstances it was undoubtedly a question for the jury to say whether the company was negligent in not ascertaining that he had entered into his dangerous position, and giving him notice of its intention to further interfere with the car at which he was at work, so that he might protect himself against danger.  We conclude therefore that there was no error in submitting the question of negligence to the jury and that the findings of the jury are conclusive.

We recommend the affirmance of the judgment.

ALBERT, C., concurs.

By the Court:  For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.