Day, J.
We do not deem it necessary to pass upon all the questions made in the case. The motion for a new trial, on the ground that the verdict is against the law and the evidence, brings the case into review on its merits.
A recovery against the company was sought in the petition chiefly on three grounds: 1. That it employed an in *471 competent conductor; 2. That the making of a “ running switch ” was a dangerous mode of doing business; 8. That the injury was occasioned by reason of the negligence of the conductor and the foreman of the brakeman, in not reducing the speed of the train so that a running switch could be made safely.
There is no evidence proving the incOmpetency of the conductor.
As to the dangerous mode of doing business, it is proper to say it does not appear that the company required running switches to be made. Nor is it clear that the conductor ordered a running switch to be made on the occasion in question. The evidence does show, however, that this mode of making switches had long been practiced by the employes of the company, and that the plaintiff below had full knowledge of this mode of doing business, and at all times acquiesced therein. He had on numerous occasions before performed the same service in making running switches as he attempted to do when he was injured. He never objected to or complained of that mode of switching. On the contrary, he seems to have known of this practice by the employes of the company when he entered its service, or at once thereafter voluntarily united with his fellow brakemen in the practice, which seems to have grown up and at all times been continued from their voluntary choice, rather than from the orders of their superior servants.
If it be conceded that the switching of cars from the main track to a side track of the road while the train is in motion, is a dangerous mode of doing the business, and ought to be regarded as evidence of negligence of the company or its officers ; still, all the employes who entered the service of the company with full knowledge that such was the practice, or acquired such knowledge afterward, and remained in the service without the least objection thereto, and fully acquiesced therein, must be regarded as having consented to the practice, or as having waived any objection thereto, and therefore as having taken the risk upon *472 themselves. Mad River Railroad v. Barber, 5 Ohio St. 541, 563 ; Kroy v. The Chicago Railroad, 32 Iowa, 357 ; Hayden v. Smithville Manufacturing Co., 29 Conn. 548; Wright v. N. Y. Central R. R., 25 N. Y. 566.
As to the alleged negligence of the conductor and foreman of brakeman, it must be observed that the evideuce clearly rebuts the idea that any authorized relation of superior and subordinate existed between the brakeman on the train. Kinsig, the supposed foreman, being the senior in service as brakeman, was intrusted by the conductor with more duties than was imposed upon the others. Neither the company nor the conductor had placed him in a position of authority over his fellow brakemen : he was therefore nothing more than their fellow servant, engaged in a common employment, whose negligence would not give the others a right of action against the company. Pittsburgh Railroad v. Devinney, 17 Ohio St. 197.
The conductor, at the time of the accident, was on the platform of the rear ear, which was used as a passenger car. The train consisted of twelve ears, all of which but the rear one were freight cars. The rules of the company require conductors of freight trains to be upon the top of the train to superintend its management. It is claimed, however, that this was a mixed train, to which this rule did not apply, and the weight of the evidence would seem to support this claim. But however this may be, the conductor seldom complied with the rule, aud his habit in that respect was well known to the brakeman, and was fully acquiesced in by them all.
On the occasion in question, the plaintiff below, without objection, as usual, undertook to make the switch', knowing that the conductor was not on the top of the train ; he can not, therefore complain of the negligence of the conductor, if any there was, in this respect.
But, independent of these considerations, the running switch on the occasion in question was made in every respect as the employes had been accustomed to make them, except, perhaps, that the speed of the engine, after it was *473 detached from the train, was faster than usual at the moment the accident occurred. The engineer had been duly notified by the brakemen that a running switch of the second car was desired. They duly signaled him to slacken the speed, to enable them- to uncouple the car. The speed was checked; the car was detached ; the conductor, on the platform of the ¿ear car, properly applied the brakp to check'the motion of the rear section of the train after it was detached, and the other brakemen were at their proper places, and neglected no part of their duties. Had the conductor been on the top of the train, nothing more could have been done by him, or any other employe of the train, than was done to conduct -the business in the usual manner, except what was done by the engineer and the injured brakeman himself. They were on the engine. Both had equal means of knowing its speed. If either, or both, were negligent, no recovery can be had. Eor the brakeman’s own negligence would defeat his recovery; and if he was without fault, and the engineer alone was negligent, in not sufficiently checking the speed of the engine for the brakeman to alight therefrom, no recovery can be had for his negligence, for he was the brakeman’s fellow-servant having no authority over him.
Neither the negligence of the engineer, nor the unexpected speed of the engine, at the instant of the accident, can be attributed to either the conductor or the alleged foreman; for both, equally with the injured brakeman, had the right to presume that the engineer would properly regulate its speed. On all such occasions he, and not the conductor, controlled' the speed of the engine, and this was well known to the injured party. This duty belonged to, and was properly committed to, the engineer. Neither the conductor nor the brakemen from the rear sections, detached and distant from the engine, could exactly determine or control its speed in the brief space of time in which the business must be done, especially at the moment of the accident. From the nature of the case, none could do that but those on the engine; and, therefore, neither the con *474 ductor nor the other employes can be charged with negligence in not checking the speed of the engine when the accident occurred.
The case at last, then, falls under the settled principle, that a servant can not recover damages of the master for an injury which results either from his own negligence or that of a fellow servant, engaged in a compion employment, having no superior authority or control over him.
The verdict, then, upon the law and the evidence, can not be sustained; The jury, doubtless, fell into the error from the concluding remark of the court in its charge to the jury, viz.:
“ If the jury find that in the instance complained of in the petition the speed of the train was so great as to make it dangerous to get off the engine, and greater than they were in the habit of having on former and similar occasions, and the plaintiff did not know the speed of the train was greater than at other times when plaintiff performed the same duty, and the plaintiff exercised ordinary care in getting off" the engine, and was without fault in this particular instance, and the company by its officers having charge of the train was negligent in thus keeping up the speed of the engine uuder the circumstances, the plaintiff is entitled to recover.”
Por want of proper qualification, this instruction was misleading in this, that it might lead the jury to find a verdict against the company upon the negligence of the engineer, who, being merely a fellow servant of the plaintiff, it was shown by the evidence, had charge and control of the speed of the engine, and whose negligence alone (except perhaps that of the plaintiff himself) occasioned the injury.
It follows that the court erred in not granting the motion of the company for a new trial, and that the judgment, for that reason, must be reversed.

Judgment accordingly.