## ILLINOIS CENTRAL RAILROAD COMPANY.

### *v.*

## ELIJAH W. SWEARINGEN.

1. FENCING RAILROADS — *when the duty is assumed by the land owner.* The duty imposed by the act of 1855 upon railroad companies to keep in repair the fences required to be erected along their roads, is not transferred to the owner of lands over which the roads may run, by the simple employment of such owner by the company, as their agent or servant, and his performance of the contract, to erect the required fence along the road located upon his land.

2. The statute only contemplates the release of the company when the duty is assumed by the land owner.

3. SAME — *of keeping in repair — diligence in respect thereto.* When a fence along a railroad has been sufficient, and from accident or wrong over which the company had no control, it becomes insufficient to turn stock, they have a reasonable time within which to repair it. It is not required that the company should

19—33D ILL.

have a patrol, at all times, night and day, passing along their road to see the condition of the fence. If this is done daily, and they shall, at once, when informed of its insufficiency, make the necessary repairs, they should not be held liable for injuries resulting from its temporary insufficient condition. The company must be held to a high degree of diligence, but not to an impossible or unreasonable extent.

4. ACTIONS AGAINST RAILROADS COMPANIES — *local and transitory.* An action on the case was instituted in the Circuit Court of De Witt county, against the Illinois Central Railroad Company, to recover damages for the killing of stock on the company's road in McLean county. Service of summons was had upon an agent of the company in the county where the suit was pending. *Held,* that the action is transitory, not local, either by the common law or under the statute.

5. SAME — *construction of act of 1853.* The act of Feb. 12, 1853, providing "for bringing actions at law or in chancery against railroad companies," in declaring where such actions shall be brought, only relates to actions at law or suits in chancery commenced where service could not be had by summons. In such cases, it authorizes publication instead of actual service. And the sixth section of that act confined the bringing of such suits to the county in which the cause of action accrued. This is the scope of the act. It was not intended to apply to cases where service could be had.

APPEAL from the Circuit Court of De Witt county; the Hon. JOHN M. SCOTT, Judge, presiding.

This was an action on the case, instituted in the court below, by Elijah W. Swearingen, against the Illinois Central Railroad Company, to recover damages for the killing of three horses of the plaintiff on the road of the company.

The ground of recovery, as set forth in the plaintiff's declaration, was, that, by reason of the fences along the company's road not being kept in repair, the plaintiff's horses got upon the track, and were run over by the cars and engines of the defendant, and thereby killed. It appears that the railroad ran through the pasture of the plaintiff, and the horses got out of this pasture upon the track, through the railroad fence. The plaintiff alleged, in his declaration, that he had not, as proprietor of the lands, erected, or agreed to erect, the fence in question.

The defendant pleaded not guilty, and eleven special pleas, the second, third, fourth, fifth, sixth and seventh of which were to the effect that the fence of which complaint was made was built by the plaintiff, under an agreement with the company, for which the latter was to pay the plaintiff a specified sum,

which they had done. To these special pleas the plaintiff demurred, and the demurrer was sustained. Issue being joined upon the first plea, the cause proceeded to trial, upon which it appeared in evidence that the fence in question was built by the plaintiff, under a contract with the company, the latter furnishing the materials for the purpose, and paying the plaintiff a stipulated sum per rod for doing the labor.

One of the horses was killed in McLean county. This suit was instituted, and service of summons had, in De Witt county.

It was in testimony that one of the horses was killed by a freight train on Saturday night, September 9, 1860, and the other two on the Monday morning following; that, in the forenoon of Saturday, the fence was in good repair, and on Monday it was found the fence had been broken, when it was repaired as well as it could be with the broken material, and in about a week afterwards it was repaired by the company with new boards.

The defendant below asked instructions numbered four, five, six and seven, as follows, which were refused:

4. That the defendant, after they have built a good and sufficient fence through a farm, and it is blown down, burnt down, or thrown down by trespassers, the defendants have a reasonable time to repair their fence, and that they are not responsible for any damages which may ensue until such reasonable time has elapsed.

5. That if the jury believe from the evidence that the railroad had a good fence on the Saturday, at $11\frac{1}{2}$ o'clock A. M., before horses were killed, and that it was a good and sufficient fence on Monday morning next afterwards, and that the defendant's agent, whose duty it was, saw this fence at both of said times above specified, that is evidence tending to show that defendant used due diligence.

6. That if the jury believe from the evidence that defendant had a good and sufficient fence on Saturday, September 11, 1860, and that it was broken down by trespassers, or burned down or blown down without fault of defendant, and that Swearingen's horse got through this fence before the defendants

had a reasonable time to repair the fence, then they will find for defendant.

7. The court instruct the jury that the plaintiff can only recover for stock killed in this action in De Witt county.

The defendant excepted to the ruling of the court in refusing these instructions. The jury returned a verdict for the plaintiff for two hundred and eighty-seven dollars and fifty cents. A motion for a new trial and in arrest of judgment was overruled, and judgment was entered upon the verdict, from which the defendant took this appeal.

The questions arising upon the assignment of errors are : *First,* whether the contract entered into between the plaintiff and the company, under which the former built the fence, was such as the act of 1855 contemplates shall operate to release the company from their duty to keep the fence in repair. *Second,* as to the degree of diligence required of a railroad company in repairing a fence which has become insufficient; and *Third,* whether this action is local or transitory.

Messrs. MOORE & GREENE, for the appellants.

Mr. L. WELDON, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court :

It is insisted that appellee was not entitled to recover because he averred in his declaration that he had not, as the proprietor of the lands, erected, or agreed to erect, the fence required by the act of 1855 (Scates' Comp. 953), when the proof shows that he did erect the fence. It also appears that the company fully admitted and recognized their liability to erect and maintain this fence, when they employed appellee, for them and with their materials furnished for the purpose, to erect the fence, and for which they paid him the sum agreed between them. Is this such an agreement as the statute contemplates shall release the road from its liability and impose it upon the owner of the adjoining land? We think not. The act imposes the duty upon the

company, but at the same time permits them, by contract with the owner, to absolve themselves from its performance, by agreement with the owner that he shall assume it.

It cannot be imagined that it was the intention of the law makers to transfer this duty from the company to the land owner, simply because the company employed him as their agent or servant to construct the fence. The statute only contemplates the release of the company when the duty is assumed by the land owner, and in this case it is perfectly apparent that when he was employed to build this fence he did not intend, nor did either party suppose, that he was taking upon himself such a duty. It might as well be contended that because a hand in the employment of the company under their direction, and in discharging their duty, had built the fence, and afterwards became the owner, that the duty was transferred from the company to him. It is not probable that it ever occurred to appellee that it could be imagined that he had assumed this duty, until he heard it claimed on the trial below, or to the company and its agents until they began to prepare for the defense of this suit. The pleas of appellant, to which demurrers were sustained, only relied upon this fact as a defense, and were, therefore, insufficient, and the demurrers were properly sustained to them.

It is likewise insisted that the court erred in refusing to give appellant's last four instructions. The first of which asserts that the company, having built a good and sufficient fence, if it was blown down or thrown down by trespassers, and loss thereby ensues, before a reasonable time had elapsed for its repair, that the company are not responsible for damages thus occasioned. This instruction, like the sixth, asserts that where the fence has been sufficient, and from accident or wrong over which the road had no control, it becomes insufficient to turn stock, they have a reasonable time within which to repair their fence. This is manifestly true, as it is not required that the company should have a patrol at all times, night and day, passing along their road to see the condition of the fence. If this is done daily, and they shall at once, when informed of its insufficient condition, make the necessary repairs, they should not be held liable.

This was the rule adopted in the case of *The Central Railroad Co.* v. *Dickerson*, 27 Ill. 55, and the instructions numbered four and six should have been given.

Under these instructions, it would have been for the jury to consider, in the light of all the circumstances appearing in the case, whether reasonable care had been used to keep up the fence. Or if it had been injured, reasonable efforts had been used to repair the same. They, as practical men, must determine this question. And the road must be held to a high degree of diligence in the performance of this duty, but not to an impossible or unreasonable extent.

Whilst the fifth instruction stated the law correctly, it would have been better had it have been qualified so as to inform the jury, that while the evidence tended to prove due diligence, it was not conclusive. Properly understood by the jury, it is free from objection; but if they understood that it could not be rebutted by other evidence, or that they could not weigh it as other evidence, then it would mislead, and would have been improper.

The seventh instruction was properly refused. This action is transitory, and not local, either by the common law or the statute. The act of 1853 (Sess. Laws, p. 65) only relates to actions at law or suits in chancery, where service could not be had by summons. It, in such cases, authorized publication instead of actual service. And the sixth section of that act confined the bringing of such suits to the county in which the cause of action accrued. This is the scope of that act. It was not intended to apply to cases where service could be had. The judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*