## SOUTH FLORIDA RAILROAD COMPANY, PLAINTIFF IN ERROR, VS. EDWARD D. WEESE, DEFENDANT IN ERROR.

1. Defective service of summons *ad respondendum* is cured by the personal appearance and pleading to the merits of the cause by the defendant.

2. Actions for injuries to the person caused by a railroad company are transitory in their nature, and may be brought in any county throughout which such road runs.

3. It is not necessary in order to bring a case within the rule that an employer is not responsible to those in his employ for injuries caused by the negligence or misconduct of a fellow-servant, that the servant who causes and the one who suffers the injury should be at the time working together in the same particular work; it is sufficient if they are in the employment of the same master, engaged in the same common enterprise, and both employed to perform duties tending to accomplish the same general purpose.

4. It is error for the court to submit a case to the jury on the theory that the relation of vice-principal existed between the defendant company and the servant whose negligence produced a personal injury to the plaintiff, when there is no testimony tending to show that such relation existed, or that the negligent servant was at the time performing any duties devolving upon the principal. Whether or not the rule in relation to vice-principals exists in this State, not decided.

5. The rule is well settled that among the positive duties resting upon the master to the servant is the obligation to exercise such reasonable care as prudence and the exigencies of the situation require in providing the servant with safe machinery and suitable instrumentalities, and a reasonably safe place in which to work. The negligence of the master in this respect is not one of the perils or risks assumed by the employe in his contract of employment, and he has the right to insist that the master shall strictly comply with his obligations in this respect. But while this rule is clearly established, it is also well settled that it is a complete answer to the claim for damages resulting from a failure to furnish suitable instrumentalities and a safe place to work,

South Florida R. R. Co. v. Edward D. Weese.—Statement of Case.

that the injured servant has full knowledge of the situation and voluntarily engaged in the employment, or continued therein with such knowledge without objection or protest, and without any assurance on the part of the employer to provide better.

Writ of error to the Circuit Court for Orange county.

### STATEMENT.

Weese, the defendant in error, sued the plaintiff in error for personal injuries received by him while in the employment of the company. The essential averments in the declaration as to the cause of action are as follows: That on the 5th day of October, A. D. 1886, the defendant company, plaintiff in error here, was a corporation owning and running a railroad from Sanford, in Orange county, to Tampa, in Hillsborough county, and that plaintiff, Weese, was employed by said corporation as a laborer on said road to wipe and clean the engines that were brought into the town of Tampa at night from service on said road, his term of service being ten hours each night when there were engines requiring the same, at the compensation of forty dollars per month; that on the night of the 4th day of October, A. D. 1886, an engine of said corporation was placed on the main track of its road in the town of Tampa, by the order of Thomas Landrum, the then acting yardmaster in the said town of Tampa, and plaintiff, Weese, being an employe of said corporation, under duty to clean said engine, and being instructed by William Coleman, an engineer, and an agent of said corporation in this department, to wipe off and clean the same, proceeded to do so as instructed; that no pit was prepared, in which to stand in the process of

cleaning said engine, and no signal lamp was furnish-
ed said plaintiff to hang upon said engine as notice
and warning to others employed on said road while
said engine was being cleaned; that in order to clean
said engine, plaintiff was compelled to get under it,
and in order to get under it, it was necessary to go
between the wheels, and when under it there was no
way of escape except between the wheels, and that
while under said engine no damage could ensue unless
from gross neglect on the part of said corporation or
its agents.

It is also alleged that said plaintiff went under said
engine to clean it about nine o'clock on the night of
the 4th day of October, A. D. 1886, with a lightwood
torch which gave abundant light and notice of his lo-
cality and employment, and that he remained at work
cleaning said engine until about four o'clock on the
morning of the 5th day of said month, when William
Coleman, the engineer aforesaid, who had placed said
engine upon said track and instructed plaintiff to clean
it, carelessly and negligently ran a train of cars be-
longing to said corporation back against said engine,
and by great force and violence drove it out of its
place, and plaintiff being forced to escape from under
said engine or be crushed by it, was caught while try-
ing to escape therefrom by the wheel of said engine,
and the muscles of the calf of his left leg were entirely
crushed off from the bone, and that said injury was
inflicted without any negligence on the part of the
plaintiff.

The declaration then alleges that said plaintiff suf-
fered great pain and sickness from said injury, and
has been wholly disabled bodily and mentally from
performing labor and attending to business since the
same was received, and also that by reason of said in-

jury said plaintiff has been permanently disabled, physically and mentally. Other sources of damage resulting from said injury are stated, but it does not become necessary to set them out here. The total damage alleged is twenty thousand dollars.

To this declaration the defendant company demurred on the grounds that it sets up no sufficient cause of action; that the relation of fellow-servant existed between plaintiff and those in charge of defendant's engine which it is alleged caused the injury; that as shown by the declaration it was plaintiff's own negligence that caused said injury, and not that of defendant or its agents; and for other causes apparent upon the face of the declaration. This demurrer was overruled and the defendant company filed four pleas. The first one was the general issue—not guilty. The second plea alleged in substance that plaintiff's injury was caused by his own negligence, and not by the fault of defendaut, or of its servants or agents. The third, that if the plaintiff was injured as he has alleged in his declaration, said injury was caused by the negligence and lack of care on part of plaintiff contributing thereto. And fourth, that if plaintiff was injured by the negligence or lack of care of any of the agents or employes of defendant, as he has alleged in his declaration, said negligence was that of the fellow-servant, or fellow-servants, of the plaintiff.

Some two months and a half after issue had been joined upon defendant's pleas, its counsel asked leave to file a plea to the jurisdiction of the court, to the following effect, *viz:* That plaintiff's cause of action, if any he has, occurred in the county of Hillsborough, in the 6th judicial circuit of Florida, and that no sufficient service has been had upon defendant to give this court jurisdiction of this cause; said service, ac-

cording to the return of the officer who undertook to to make the same, having been made on one Rudolph, who was not the president, secretary, general manager, general solicitor, superintendent, or resident business agent where the cause of action occurred. This application was refused and the cause tried upon the issues presented, resulting in a verdict for plaintiff in the sum of five thousand dollars. A motion in arrest of this judgment was made by the defendant below on the grounds that no such service was had in said cause upon defendant as to give the court jurisdiction thereof, and the court had no jurisdiction to try and determine said cause, and the same should have been tried, if at all, in the county of Hillsborough, 6th judicial circuit of the State of Florida. This motion was overruled. Upon a motion for a new trial made by defendant, plaintiff remitted the sum of two thousand dollars, and thereupon the court overruled this motion for a new trial and awarded judgment in favor of plaintiff for three thousand dollars and costs of suit, and from this judgment the defendant has brought the case here by writ of error.

On the point of the company's liability, including the plaintiff's relation to the company and its employes operating at the railroad yard in Tampa, and the cause of the injury to the plaintiff, the effect of the testimony is as follows: Weese, the plaintiff, was employed by the defendant company some time about the 28th of July, 1886, to wipe and clean engines that went into Tampa and to fire them up before leaving time on out-going trips. During his employment this service was performed at night between 6 o'clock in the evening and 6 o'clock in the morning, as the engines went into Tampa in the early part of the night, and left early next morning. When Weese was first

employed the railroad was narrow guage, and he worked on the engines in wiping and cleaning them while standing over pits on side tracks, where they were placed for this purpose. A pit is a dug out place between the tracks deep enough for a man to remain in and escape injury should the engine pass over it. About the middle of September, 1886, the rails of the company's road on the main line were widened to a standard guage, and from the change up to the time of the injury, which was on the morning of the 5th of October, 1886, only one side track of the company's road at Tampa had been widened to the standard guage, and no pit had been constructed at that point under either the main line or the side track of the changed guage. From the time the guage was widened, engines, after coming into the yard, were constantly placed on the main line and the widened side track, and the plaintiff there performed his work of cleaning and wiping them. In order to perform, this service it was necessary for him to go under the engines, and the only way this could be done was by passsing between the wheels of the engine, and this space was narrow, not exceeding three feet near the rails, and got much less where the wheels approached each other nearest. The space under the engine was about six feet long, the width of the guage, and high enough for a man to remain on his knees with his body erect. In the yard at Tampa much shifting or making up of trains was done at night, at least two trains—one passenger and the other freight—were made up each night, preparatory to leaving next morning. The plaintiff knew these facts, as it was his duty not only to wipe the engines during the night, but to put fire into them at least two hours next morning before leaving time. He continued in his employment of wiping engines after

the guage was changed, and made no objection to his work on account of the absence of pits, or that the engines were placed on the main line and side track for him to work on them.   On the night of October 4th, 1886, two engines were in the railroad yard at Tampa for plaintiff to clean, one a passenger engine and the other called the freight engine.   Plaintiff cleaned the passenger engine, and was at work on the freight engine some time about 4 o'clock in the morning when he received the injuries for which he sues.   This freight engine had been placed on the main line a short distance south of the passenger depot by William Coleman, yard engineer, with box cars in front and behind it.   There is a conflict in the evidence as to whether or not the engine was fronting north or south. The plaintiff says it was fronting south, and in this he is corroborated by other testimony; but the defendant's testimony is to the effect that the engine was fronting north, the direction it was to go on its outward trip. The main track terminated with an abutment not far south of where this engine was placed and the space between the engine and the abutment contained box cars.   On the south end the engine was coupled to a freight box by the draw bar, and on the north end it was either coupled to cars, or they were standing close to it.   The plaintiff was not certain whether or not the engine was coupled onto a car north, but if not, cars were standing near it, and the effect of other testimony in the record tends to show that the engine was coupled to the cars north.   About three o'clock in the morning of the 5th of October, 1886, Coleman, the yard engineer, was engaged in making up the passenger train preparatory for leaving next morning. Weese, it seems, had put fire in the engine used by Coleman, and knew that he was in the yard shifting

cars. This he was in the habit of doing every morning. On the morning in question the yard engineer backed the passenger engine to the fish wharf and brought up a car, and in coupling it on to the passenger coaches standing in front of the engine under which Weese was at work, moved it, and in attempting to escape between the wheels as the engine was moving, Weese got caught, and his left leg injured. Weese and another witness who was on the engine at the time testify that the engine was moved about twelve or fifteen feet. Weese says that he was at work on the eccentric bars immediately under the engine when it was struck, and that it moved back moderately fast—as fast as a man can walk or faster—and that he crawled along under the engine to keep from being crushed by it. His only way of escape was through the wheels, and he jumped between them, because he thought it was his safest course.

The testimony of other employes in the yard at Tampa is to the effect that the engine came back carefully, and that the coupling on the fish car only took the slack out of the cars, moving the engine not over six inches. Their testimony also tends to show that Weese was not directly under the engine, and his leg was across the rail, but Weese testifies that he was directly under the engine, and his leg was caught in his effort to escape between the wheels while the engine was in motion. This engine had the brakes set on it tightly, and was not "chocked." Weese put the brakes on, and, it seems, he had been told that the engines should be "chocked," or the brakes put on, to prevent them from rolling, and he had been shown how to chock the engine by putting wood on the track in front and behind the wheels. This instruction as to "chocking" the engines was given before the guage

was changed. It also appears that no signal lantern was hung out on the engine, and Weese did not make any request to be furnished with any, and the company did not offer to furnish any. There were lights hanging along the depot shed not very far from where the engine was stationed, and Weese had a torch light with him under it. The torch light consisted of a can with a tube in it to burn oil.

The yard engineer testified that he supposed it was customary for railroad companies to furnish signal lanterns if the engine wipers demanded them.

No signal lanterns had been hung on the engines at any time when Weese worked on them, as he testifies, although one witness introduced by him says he thinks a signal lamp was on the engine at the time of the injury.

The engineer, Coleman, who backed the engine against the cars that moved the engine under which Weese was injured, was under the control of one Landrum, yardmaster at Tampa, whose duties, it seems, were to take charge of all trains upon their arrival, make them up ready to go out, do all necessary shifting, take charge of the cleaning of cars and turn trains over to conductors ready to go out. Coleman was the engineer who managed the engines in doing the shifting, and he was under the direction of the yardmaster.

Weese testified that he was employed to work for the company by the master mechanic at Tampa, whose duty it was to repair engines, and whose name was McLane, but that Instrom was master mechanic at the time of the injury; that Instrom had been absent from Tampa for eight or ten days, or two weeks, when plaintiff got hurt, and in the absence of the master mechanic, Coleman occupied his place, so far as plaintiff

JUNE TERM, 1893. 221.

South Florida R. R. Co. v. Edward D. Weese.—Statement of Case.

was concerned, and by this he explains that Coleman overseed his work and instructed him in reference to the same. When Instrom was present he superintended and instructed plaintiff, and in his absence Coleman took Instrom's place. Plaintiff was asked who put Coleman over him, and he said he supposed Instrom did; he never heard any one say that Coleman was to look after him, and all he knew about it was when Instrom left he told plaintiff to go to Coleman for any instructions that he might need in his business. He also stated that Coleman told him in Instrom's absence that he, Weese, would have to continue to wipe engines on the main line and side track, and said that plaintiff would have to clean engines there until the pits were broadened out, and that he continued to clean the engines there until he got hurt. No special instructions were given Weese in reference to wiping the engine on the occasion he got hurt. When first employed he was told to wipe the engines when they came in and were ready, and after learning his duties he continued to wipe the engines without further special instructions. After the guage was changed he continued to wipe the engines without pits, and Coleman told him he would have to do this until pits were constructed. It does not appear that Weese ever went to Coleman for any instructions in reference to wiping engines, and in performing this service he was acting in the line of his employment by the company.

The superintendent of the company testified that McLane, a machinist in the Sanford shops, was transferred from Sanford to Tampa to take charge of the inspection of engines and to do any necessary under-repairing on them, and witness considered it McLane's duty to see that the engines were properly cared for

in detail. He could not say what particular power McLane had at the time of the injury over the engine wiper, but the rules governing in his position did not give the power to discharge or appoint a man except by consent of the master mechanic, and he, the inspector, is held responsible for carelessness in cleaning engines intrusted to his care. If any engines were found in a filthy condition the master mechanic, instead of going to the wiper, would go to the inspector; or in other words, would not go over the head of a superior to his inferior. Instrom, who occupied the same position at Sanford that McLane did at Tampa, was sent to Tampa when McLane left. That engine wipers were supposed to know what they needed in performing their duties, and that it was customary to furnish signal lanterns to them upon request. This request should be made to the master mechanic, and he furnished such lanterns upon proper requisitions.

The testimony on other branches of the case need not be referred to in this connection.

*S. M. Sparkman and E. K. Foster* for Appellant.

*Hammond and Jackson* for Appellee.

MABRY, J.:

The overruling of the demurrer to the declaration is assigned as error here, but counsel for plaintiff in error have not discussed this point in their brief, and we will consider it as abandoned.

The refusal of the court to permit counsel for defendant to file a plea to the jurisdiction of the court before the trial, is another assignment of error. The court also refused to charge the jury at the instance of

the defendant, that if the injury occurred in Hillsborough county, and not in Orange county, the verdict should be for the defendant.

The suit was instituted in Orange county, and it is alleged in the declaration that the injury to the plaintiff for which he sues occurred in Hillsborough county. The defendant is a railroad company owning and operating a railroad from Sanford, in Orange county, to Tampa, in Hillsborough county. The return of the sheriff on the summons shows that it was served by "delivering a true copy to Rudolph, a person over the age of sixteen, at the same time showing her the original, at the superintendent's office of the South Florida Railroad." The defendant appeared by attorney and also filed a demurrer and the pleas mentioned in the statement accompanying this opinion. The defect in the service of the summons, if any existed, was obviated by the appearance and pleading on the part of the defendant, and hence there was no ground to be allowed to plead to the jurisdiction of the court on account of the service of the summons. The action here is for personal injuries to the plaintiff, and is transitory in its nature, and not local either at common law or by any statute in force in this State at the time, further than to confine the action to some county through which the road ran. Section 33 of Chapter 1989, laws of 1874, provides that all actions against any railroad corporation created by the laws, or operating a railroad, in this State, shall be brought in some county through which such road runs. The action being transitory, the court had jurisdiction to entertain the suit in any county through which the defendant's road ran, and the defendant was brought properly before the court. The appearance of the defendant and pleading to the merits of the action in the Orange Cir-

cuit Court gave that court jurisdiction, and we think no error was committed in refusing the application of defendant to file the plea to the jurisdiction of the court. Illinois Central R. Co. vs. Swearingen, 33 Ill., 289; Northern Central Co. vs. Schall, 16 Md., 331; Speer vs. Missouri, Kansas & Texas Ry. Co., 23 Kansas, 571; Glen vs. Hedges, 9 Johnson, 67. It is the duty of the court at any time before verdict to allow all necessary amendments in the pleadings, in order that the merits of the case may be presented. Robinson vs. Hartridge, 13 Fla., 501; Livingston vs. Anderson, 30 Fla., 117, 11 South. Rep., 270. But in the present case the plea desired to be filed would not have availed defendant if it had been filed in time.

On the subject of fellow-servants the court instructed the jury as follows, *viz:* "Whether Coleman, the engineer, whose act is said to have caused the injury to Weese, the plaintiff, was a fellow-servant with the plaintiff, is a question of fact for you to determine under the law as I shall give it to you in charge. * * It is a general rule of law that one fellow-servant can not recover from a common master for injuries done to him by the negligence or carelessness of another fellow-servant, when the master himself is not at fault; but the employes of a common master are not fellow-servants, for the law defines fellow-servants to be those who are engaged in working together or in the same line of employment. Hence it is not every employe of a common master who is forbidden to recover for injuries caused by the carelessness of another employe. * * Those who are working together in the same line of employment under a common master are fellow-servants, but the relation does not extend to all the employes of a common master. * * The

*alter ego* of a corporation is one who stands in the place of the corporation itself, and although an employe of the company is not a fellow-servant with those whom he controls or directs, his act in contemplation of law, is the act of the company, and they can not avoid responsibility for it on the ground of fellow-service, where injury occurs. It is for you to determine from the evidence whether Coleman stood in the relation of the *alter ego* of the company toward Weese at the time of the accident. * * One who is placed by the master in control of a co-employe and said co-employe is made subject to his orders, stands in the place of the master and is not a fellow-servant with those under his orders. * * If the jury believe from the evidence that the relation of fellow-servant existed between plaintiff and the engineer, and the common master was not itself guilty of negligence, they will find for the defendant."

The court refused to give the following instructions requested by the defendant on the subject of fellow-servants, *viz:* "It is the duty of the court to determine who are fellow-servants in any given case involving the question as to who are fellow-servants." "The engine wiper employed to wipe engines and fire up the same in the yard where shifting and making up of trains were done, is a fellow-servant with the engineer operating the engine in doing such shifting, and can not recover for any injury which he may have received through the negligence of such engineer whilst both were engaged in the line of their respective duties." "If the jury believe from the evidence that the plaintiff at the time of his alleged injury, if any he received, was in the employment of the defendant as an engine wiper in the yard of the defendant at Tampa,

and that the negligence of the yardmaster or the engineer working under said yardmaster at Tampa in shifting and making up the trains, or doing other similar work, caused said injury, then the relation of fellow-servant existed between the plaintiff and such yardmaster and the engineer, and the plaintiff can not recover for such injury."

The giving of the charges above, and the refusal to give those requested by defendant, are assigned as error here.

In Parrish vs. Pensacola & A. R. R. Co., 28 Fla., 251, 9 South. Rep., 696, we held that a master was not liable to one servant for the negligence of a fellow-servant when engaged in a common work or in the same general undertaking, and that an engineer and fireman, in charge of an engine drawing cars used in getting gravel to repair the road bed, were fellow-servants with shovelers of gravel on the cars, while the latter were under the control and direction of a separate boss and not subject to the control of the employes in charge of the engine. The charge given to the jury in the Parrish case announced that a fellow-servant is one engaged with another under a common master in the same common employment, so that they are brought in contact with each other, notwithstanding they are subject to the orders and under the exclusive control of separate bosses and in different work in the same service. This charge as applied to the facts of that case was held to be correct. In view of the growth and development of business enterprises necessitating their division into separate departments, some courts have established what is called the separate department distinction, and maintain that it is not enough to constitute fellow-servants that they were performing parts of a common undertaking not

bringing them together, but it is essential, either that they were actually co-operating at the time of the injury, in the particular business in hand, or that their usual duties should bring them into habitual association, so that they can exercise an influence one upon the other for their mutual protection. The Illinois court seems to take this view, and also those of Kentucky, Georgia and Virginia, and probably a few others. Louisville, C. & L. R. R. Co. v. Cavens, 9 Bush, 559; Nashville & Chattanooga R. R. Co. and Memphis & Charleston R. R. Co. vs. Carroll, 6 Heisk., 347; Nashville & Decatur R. R. Co. vs. Jones, 9 Heisk., 27; Cooper vs. Mullins, 30 Ga., 146.

The rule that seems to be sustained by the weight of authority is, that it is not necessary in order to bring a case within the rule that an employer is not responsible to those in his employ for injuries caused by the negligence or misconduct of a fellow-servant, that the servant who causes and the one who suffers the injury should be at the time engaged together in the same particular work; it is sufficient if they are in the employment of the same master, engaged in the same common enterprise, and both employed to perform duties tending to accomplish the same general purpose. Wright vs. New York Central R. R. Co., 25 N. Y., 562; Texas & Pacific Ry. Co. vs. Harrington, 62 Texas, 597; Holden vs. Fitchburg R. R. Co., 129 Mass., 268; Kirk vs. Atlanta & Charlotte Air-Line Ry. Co., 94 N. C., 625; Quincy Mining Co. vs. Kitts, 42 Mich., 34; Foster vs. Minnesota Central Ry. Co., 14 Minn., 360; New York, Lake Erie & Western R. R. Co. vs. Bell, 112 Pa. St., 400; Slattery's Admr. vs. Toledo & Wabash Ry. Co., 23 Ind., 81; Brodeur vs. Valley Falls Co., 16 R. I., 448; Gormly vs. Ohio & Mississippi Ry. Co., 72 Ind., 31; Baltimore Elevator Co. vs. Neal, 65

Md., 438; Wood's Master and Servant, sec. 425; Mc-Kinney on Fellow-Servants, sec. 9.

The facts in the Parrish case showed that the negligent and injured servants were brought together in the common work of moving the gravel, and hence the charge of the court as applied to such a state of facts was not error. If we eliminate the view that Coleman, the negligent engineer in the case before us, was the vice-principal of the defendant as to Weese, the plaintiff, it is evident that the relation of fellow-servants existed between them at the time of the injury, according to the rule announced by us in the Parrish case. They were employed by a common master in a common employment, and were associated with each other in the performance of their respective duties. It was Coleman's duty under the direction of the yardmaster to manipulate the engines in the yard in doing the necessary shifting and making up of trains preparatory to leaving. It was the duty of Weese to wipe the engines in the same yard and fire them up before leaving time. They were under different bosses, but still they were engaged in a common work or in the same general undertaking. They would be regarded as fellow-servants under the decisions of some of the courts holding to the separate department limitation. This will be illustrated by two cases decided in Illinois. In the case of Chicago & Alton R. R. Co. vs. Murphy, 53 Ill., 336, the injured servant was one of several workmen under the charge of a foreman whose duty it was to examine trains on their arrival at the station and make all needed repairs. The injured servant had been engaged in repairing a car in a freight train, and, having finished this work, started to the work shop where they kept tools, when, in passing down between the rails of the main track, he was struck by a switch

engine and so injured that he subsequently died. The switch engine was constantly engaged on the station grounds, and although under the immediate control of a yardmaster, it was used for whatever purpose it might be required, among others, for switching such cars as were undergoing repairs. The engineer in charge of this engine and the men engaged in repairing the cars were held to be strictly fellow-servants, and the common master not liable for the negligent acts of each other. But in Chicago & Northwestern R. R. Co. vs. Moranda, 93 Ill., 302, where the injured servant was under duty to repair and keep in order a section of railroad track, and while in the performance of this duty an express train passed by at great speed, and having stepped aside to avoid the train, said servant was struck by a large lump of coal carelessly cast from the tender by the fireman on the passing train, it was held that the fireman on the express train and the servant, whose duty it was to repair the track, were not fellow-servants. It was held in the case of R. & D. R. R. Co. vs. Norment, 84 Va., 167, that a yardmaster or conductor was not a fellow-servant with an overhauler—car repairer—in the same yard, though the latter was not under the control of the former. They were regarded as employed in different departments of service. The Virginia court holds to the doctrine of the separate department limitation, to which we have above referred. McKinney on Fellow Servants, sec. 72, and notes. Leaving out of view the question of vice-principal, Weese and Coleman were, as shown by the evidence before us, under the rule in the Parrish case, fellow-servants employed by a common master and engaged in the same general undertaking. But the court instructed the jury that "one who is placed by the master in control of a co-em-

ploye, and said co-employe is made subject to his orders stands in place of the master, and is not a fellow-servant with those under his orders;" and that the jury must determine from the evidence whether or not Coleman occupied the relation of vice-principal of the company as to Weese. The defendant's liability, it is evident, was submitted. to the jury upon the hypothesis, if sustained by the evidence, that Coleman was the *alter ego* of the company so far as Weese's employment was concerned. This court has never decided whether or not the rule established by many courts in reference to vice-principals prevails in this State. There are many decisions of the highest authority adhering to such a rule, but it must be admitted that there is grave conflict of authority on this point. McKinney on Fellow-Servants, sec. 43, *et seq*. This rule as stated by Beech on Contributory Negligence, sec. 325, is as follows, *viz:* "Where the negligent servant is in his grade of employment superior to the injured servant, or where one servant is placed by the employer in a position of subordination, and subject to the orders and control of another in such a way and to such an extent that the servant so placed in control may reasonably be regarded as representing the master as his *alter ego* or vice-principal, when such inferior servant, without fault and while in the discharge of his duties is injured by the negligence of the superior servant, the master is liable in damages for the injury." The Supreme Court of the United States has given the weight of its authority to this view. C., M. & St. P. Ry. Co. vs. Ross, 112 U. S., 377.

The testimony before us did not in our judgment authorize the submission of the case to the jury on the theory that the company was liable for the neg-

ligence of the engineer, Coleman, as its vice-principal, even if such a rule obtains in this State. Weese testified that he was over 21 years old when employed to wipe engines and fire them up in the Tampa yard, and it is entirely clear that he was engaged in this business when he received the injuries for which he sues. It is true he testified that the master mechanic at Tampa whose name was Instrom, told him to go to Coleman for instructions in his (Instrom's) absence, and that in his absence Coleman overseed his work and took Instrom's place; also that Coleman showed him, Weese, when he was first employed how to "chock" the engine, and after the gauge was changed, and in the absence of Instrom, informed him, Weese, that he would have to continue to wipe engines on the main line and side track without pits until they were prepared. But Weese says himself, and this is all the testimony there is on the subject, that all he knew about Coleman's being placed over him was what Instrom said about going to Coleman for instructions. Conceding that it is shown that Weese in the performance of his duties was under the directions of the master mechanic at Tampa, or, according to the testimony of the superintendent, which is not inconsistent with that of Weese, under the immediate control of the inspector at Tampa, who was himself under the master mechanic, it does not appear that he was engaged at the time in any service by the direction of either the inspector or Coleman outside of his regular employment, or that he ever went to Coleman for any instructions in reference to his duties at the time of the injury. But whatever may be the effect of the direction of Instrom to Weese to go to Coleman for instructions in the performance of his duties, it is made to appear beyond question that Coleman's act that

resulted in Weese's injury was performed as servant in the line of his regular employment, and he was not therein performing any duties devolving upon the principal. The negligent act of Coleman complained of related solely to his duty as co-laborer with Weese, and there is an absence of connection between the supposed grant of authority to Coleman over Weese, and the injury that happened to the latter. McKinney on Fellow-Servants, sec. 42; Chicago & Alton R. R. Co. vs. May, 108 Ill., 288; 15 Am. & Eng. R. R. Cases, 320. There is no complaint that Coleman was not a competent man for his place, and that the company was negligent in employing him as engineer in the yard at Tampa. The theory that the defendant company placed Coleman over Weese as its vice-principal in respect to the performance of their duties at the time, is without foundation in the evidence. It has for its support only the instruction, given by the inspector at Tampa, who was Weese's boss, to go to Coleman, the yard engineer under the direction of the yardmaster for instructions when the yardmaster was absent. It is entirely clear from the evidence that there was nothing in the employment of Weese and Coleman by the company to subject the former to the control and subordination of the latter, and, as before stated, at the time of the injury they were performing duties strictly within the line of their respective employments. Coleman not being in any sense the vice-principal of the company as to Weese in the duties he was performing at the time of the injury, it follows from what has already been said that they were fellow-servants under a common master engaged in a common undertaking. The court, then, was in error in submitting the case to the jury on the theory that Coleman was the *alter ego* of the company, be-

cause there was no testimony to authorize a finding on this ground. From this standpoint it becomes unnecessary for us to say whether or not the rule above referred to obtains in this State, and if so whether or not the charges given by the court to the jury correctly stated the rule on this subject. The court should not have given any charges at all on this subject upon the state of facts as shown to us, and what was said, we think, was calculated to mislead the jury.

The second and third instructions requested by defendant on the subject of fellow-servants, and set out in a former part of this opinion, contained correct propositions of law as applied to the facts of the case, and should have been given. For these errors a reversal of the judgment must follow, but a ruling on the other branch of the case makes it proper for us to say something in reference to other grounds upon which a recovery is sought to be had.

The declaration alleges that no pit was prepared in which the plaintiff could stand while wiping engines, and no signal lamp was furnished him to hang out as notice and warning to other employes while engines were being cleaned. It is implied in the contract of employment between the employer and employe that the latter assumes the risks and perils ordinarily attending or incident to the business in which he voluntarily engages for hire, and this includes the risk of injuries resulting from the carelessness or misconduct of fellow-servants engaged in a common work or general undertaking. But the law is well settled that a master must not expose his servant when acting in the line of employment to dangers and hazards against which he may be protected by reasonable care and diligence on the part of the master. Among the posi-

tive duties resting upon the master to the servant is the obligation to exercise such reasonable care as prudence and the exigencies of the situation require in providing the servant with safe machinery and suitable instrumentalities, and a reasonably safe place in which to work. The negligence of the master in this respect is not one of the perils or risks assumed by the employe in his contract of employment, and he has the right to insist that the master shall strictly comply with his obligation in this respect. The auhorities are not inharmonious on this point. Hought vs. Railway Co., 100 U. S., 213; Davis vs. Central Vermont R. R. Co., 55 Vt., 84; McKinney on Fellow-Servants, secs. 24, 25, and authorities cited in notes.

But while the rule just announced is clearly established, it is also well settled that it is a complete answer to the claim for damages resulting from a failure to furnish suitable instrumentalities and a safe place to work, that the injured servant had full knowledge of the situation, and engaged in the employment or continued therein without objection or protest and without any promise or assurance on the part of the employer to provide better. There is some conflict of authority on this point, but we think it can be safely stated that the prevailing judicial view is, that where a servant voluntarily engages in a service for another, and has full knowledge that the instrumentalities he is to use and the situation in which the service is to be performed are dangerous, and the danger therefrom is apparent, and he makes no protest and his employer does not mislead him in any way as to these matters, he assumes the risks ordinarily incident to that employment, and cannot recover for injuries resulting therefrom. The exception to the rule was not established to relieve an employer from the duty due to

his employe to furnish him safe and ᵣ table instru-
mentalities with which to work, but its justness is
found in the consideration that where an employer
does not furnish safe implements and does not pretend
to do so, and this fact is fully known to the employe,
he waives this duty on the part of the employer and
should not be permitted to recover for injuries received
while engaging in such service without such instru-
mentalities. Indianapolis & St. L. R. Co. vs. Wat-
son, 114 Ind., 20, 33 Am. & Eng. R. R. Cases, 334;
Hough vs. Railroad Co., *supra*; Galveston, H. & S. A.
Ry. Co. vs. Lempe, 59 Texas, 19, 11 Am. & Eng. R. R.
Cases, 201; Umback vs. Lake Shore & Michigan South-
ern Ry. Co., 83 Ind., 191, 8 Am. & Eng. R. R. Cases,
98; De Forest vs. Jewett, 88 N. Y., 264, 8 Am. & Eng.
R. R. Cases, 495 ; Campbell vs. Pennsylvania R. Co.,
24 Am. & Eng. R. R. Cases, 427; Lynch vs. Sagamore
Manufacturing Co., 143 Mass., 206; Buzzell vs. Laconia
Manufacturing Co., 48 Maine, 113, 77 Am. Dec., 212
and notes; Galveston, H. & S. A. Ry. Co. vs. Drew, 59
Texas, 10; Kroy vs. Chicago, R. I. & P. R. R. Co.. 32
Iowa, 357; Muldowney vs. Illinois Central R. Co., 39
Iowa, 615; Wood's Master and Servant, secs. 326, 327;
McKinney on Fellow-Servants, sec. 30.

The court instructed the jury that the rule of law
which exempts a master from responsibility to the
servant for injuries received from the negligence of
his fellow-servant does not excuse the employer from
the exercise of ordinary care in supplying and main-
taining suitable instrumentalities for the performance
of the work required, and that it was the duty of rail-
roads to provide all necessary and usual means for the
protection of their employes against injury by acci-
dent while engaged in their duties. The defendant
excepted to this charge, and it is assigned as error.

The point of objection is not that the charge does not contain within itself a correct statement of a legal proposition, but that it was erroneous as applied to the facts of the present case, as Weese fully knew the dangerous position which he was occupying, and with full knowledge of this situation he continued to wipe engines in the Tampa yard, although no pits were prepared. If the court had refused to instruct the jury upon being requested to do so, that Weese was not entitled to recover if the testimony showed that he was within the exception to the rule, it would have been error. But the court also instructed the jury that when a servant enters into the employment of another he is presumed to have contracted with reference to all hazards and risks ordinarily incident to the employment and cannot recover for injuries resulting to him therefrom. Also, a servant is bound to see patent and obvious defects in the instrumentalities of the business in which he is engaged, and when he comes into the service of a person or continues in such service knowing that the instrumentalities employed have obvious and patent defects, or has equal oportunity with the master of knowing that such instrumentalities are unsafe and dangerous, he takes the risk of their use upon himself and he cannot hold the master responsible for injuries resulting therefrom. The two last mentioned charges were given by the court at the instance of the defendant, and no assignments of error are based upon them. When the three charges are considered together it leaves no room for objection on the ground that the first had the effect to mislead the jury. For although they were told that the defendant's exemption from liability to one servant on account of the negligence of a fellow-servant did not excuse it from furnishing suitable instrumentalities with which to work,

still they were told that if the plaintiff with full
knowledge of the dangerous situation engaged in the
service he could not recover for injuries resulting there-
from. The court was also requested to give the fol-
lowing charge, the refusal to give which is assigned as
error, *viz:* "If the jury believe from the evidence that
the plaintiff, Weese, was injured while engaged in the
regular line of his duties, by an engine under which
he was working, being moved whilst he was under-
neath the same, and should further believe that there
was no pit where such engine was placed in which he,
the said Weese, could stand whilst performing such
duties, for which he was employed, but that he knew
this at the time he went under the engine, and should
believe further that the said Weese had been accus-
tomed for several days or two weeks prior to receiving
the injury, if any he received, to perform said duties,
not having a pit to stand in at the time he was so en-
gaged in the performance of said duties, and knew or
should have known that the place in which he was so
engaged in performance of said duties was dangerous,
then he cannot recover for any injuries so received,
and the jury must find for the defendant." This
charge is nothing more than the application of the
principle of law already given to the jury by the court
to the facts of the case under consideration, and we
think it should have been given. The court had stat-
ed to the jury, and it was a correct proposition, that a
servant is bound to see patent and obvious defects in
the instrumentalities with which he works, and when
he goes into the service of a person, or continues
therein, with full knowledge that the instrumentali-
ties employed have obvious and patent defects, he
takes the risk of their use upon himself, and cannot
hold the master responsible for injuries resulting there-

from. Under the testimony the defendant had the right to have this charge given to the jury.

The court charged the jury on the law applicable to contributory negligence, but nothing need be said in reference to these charges. What has been said covers the merits of the controversy presented here, and enough to dispose of the case. It is to be noted that this case arose prior to the passage of Chapter 3744, laws of 1887.

For the reasons given the judgment must be reversed. It is therefore ordered that the judgment be reversed and a new trial awarded.