ATLAS DREDGING COMPANY, *Plaintiff in Error,* v. SUSIE V. MITCHELL, *Defendant in Error.*

Opinion Filed November 15, 1917.

Petition for Rehearing Denied January 14, 1918.

1. The common law doctrine of contributory negligence—except in the case of employes of railroad companies, and

persons engaged in certain hazardous occupations—is in force in this State.

2. Where an employe is guilty of negligence which contributes proximately to his injury, he cannot hold the master liable for such injury.

3. The servant in the performance of his duties is bound to exercise ordinary care, or that degree of care which prudent persons usually exercise under similar circumstances, and if he is injured by failure to exercise such care, his master is not liable.

Writ of Error to Circuit Court of Hillsborough County, F. M. Robles, Judge.

Judgment reversed.

*Knight, Thompson & Turner* and *W. F. Hines,* for Plaintiff in Error;

*H. S. Hampton* and *A. H. King,* for Defendant in Error.

BROWNE, C. J.—This is a suit by Susie V. Mitchell against the Atlas Dredging Company, a corporation, for damages for the death of her son Joseph Mitchell, who was drownded or otherwise asphyxiated in a diving suit, while attempting to perform services for the defendant.

The declaration alleges that the services of Joseph Mitchell were engaged by the defendant, the Atlas Dredging Company, as a diver in an undertaking that was extremely hazardous and dangerous, and that defendant agreed as part consideration for such services, that it would furnish the diving suit for use by said Mitchell, but negligently and carelessly failed to inspect and examine the same so as to discover certain defects

therein, which examination thereof was necessary to discover, and that the defendant knew, or in the exercise of ordinary care by proper inspection would have known, that the diving suit was unsafe and out of repair, and that Mitchell relying upon the obligation of the defendant to furnish a safe and suitable diving suit, put it on and went into the waters of Hillsborough Bay as a diver, and while in the discharge of his duties, the diving suit by reason of its bad repair leaked so that by the inrushing water Mitchell was drowned.

A demurrer to the declaration was overruled and defendant filed pleas of "not guilty," of contributory negligence, of assumption of risk, and denying the relation of employer and employee between the defendant and the plaintiff.

Upon issues joined the parties went to trial and after verdict and judgment for plaintiff, the defendant comes here on writ of error.

There are thirty-eight assignments of error. These relate to the refusal of the court to grant a new trial; in not directing a verdict for the defendant after the plaintiff had closed his testimony; to the admission and rejection of testimony; and to charges given to the jury on the request of the plaintiff.

The defendant in error makes the point on each and every one of the assignments of error, that they are not noticed in the brief of the plaintiff in error and not argued by counsel, that they are all therefore abandoned, and consequently there is no assignment of errors for this court to consider or determine.

It is true the plaintiff in error does not designate each assignment of error argued by him by its number, but he quite fully argues several of them, and at the conclusion of his brief he says "We have argued the first,

second, third, fourth, fifth, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth" assignments of error. While we think that it is a better practice for attorneys to designate the assignment or assignments of error to which the argument is directed, we do not find that the contention of the defendant in error, that none of the assignments are noticed or argued by the plaintiff in error, is sustained as to all the assignments. He has fully noticed and argued those assignments of error which relate to the admission of certain testimony for the defendant over the objection of the plaintiff, the refusal of the court to direct a verdict for the defendant after the plaintiff had closed his testimony, the refusal of the court to permit the defendant to cross-examine the witness Gross, and the refusal of the court to grant the defendant's motion for a new trial on the grounds that the verdict was contrary to law and contrary to the evidence and not supported by the evidence.

It will not be necessary to discuss those assignments which relate to the admission or rejection of testimony, or exceptions to the charges given or refused by the court, as the case must be determined on a more vital point, the contributory negligence of the deceased.

The contention of the plaintiff below is that the defendant agreed to furnish a diving suit for Mitchell as part of his compensation, and that it was its duty to furnish one in good state of repair, and safe for the deceased to use, but instead of doing this, the defendant furnished a diving suit which was unsafe and out of repair, and that the defendant in the exercise of ordinary care, by proper inspection would have known its unsafe condition. This theory places solely upon the defendant the obligation of using ordinary care to discover any defects in the suit which rendered it unsafe, whereas

with regard to obvious defects, the law makes it the duty of the plaintiff to exercise ordinary prudence to discover them. . His failure to do so, when by the exercise of the slightest observation, he would have observed them, directly contributed to his misfortune.

It is claimed that the defendant furnished an unsafe diving suit for Mitchell to use, and that its negligence consisted in not examining or properly inspecting it whereby it would have known that the suit was unsafe and out of repair. The defects in the suit which plaintiff contends permitted water to enter the suit and caused the death of Mitchell by drowning, were the absence of one or two thumbscrews or nuts from the back of the collar where the helmet is fastened on, and a chafed or worn place and a hole in a seam, on the shoulder. A witness for the plaintiff testified that he went with his uncle in a small skiff alongside the barge where Mitchell was preparing to do the diving, and that he got out and went on board, and while there saw parties on the barge bringing the suit to Mitchell and putting it on him. He noticed that there was something wrong about it in that there were one or two thumbscrews or butterfly nuts missing on the back of the collar, and that there was a worn or chafed place on the shoulder; that he couldn't tell whether the chafed place went clear through or not; that he was standing eight or ten feet away from Mitchell and could easily see the chafed or worn place on the shoulder and the absence of the thumbscrews; that he could easily see that these nuts or thumbscrews were off, and that anyone could have observed it, and could have seen the chafed or worn place on the shoulder; that Mitchell himself could have seen it before he put the helmet on; that it was not any of his business to notice any defects in the diving suit, but nevertheless, he saw

the chafed place on the shoulder and that the nuts were missing; that his uncle remained in the skiff alongside the barge, and about five feet below, and if a person were standing up in it his head would be even with the deck of the barge; that his uncle noticed the nuts were gone and that there was a worn or chafed place on the shoulder and called his attention to it.

Another witness testified that he saw the suit the day after Mitchell died, and that one or two of the nuts were gone and that there was one hole that he could put his fingers in, "it was in a chafed place in the suit, and I put my two fingers in the hole there." He said the suit had the appearance of having "been worn considerably, or had had hard usage." When asked if the holes were plainly visible, he said: "Yes, they were in open plain view, if that is what you mean; that is, they would be to a seafaring man if he examined it closely; but if he didn't have any reason to examine it closely they wouldn't be, no sir."

At the conclusion of the plaintiff's testimony the defendant moved the court to direct a verdict for the defendant, on the grounds that no evidence had been submitted upon which the jury could lawfully find a verdict for the plaintiff, because if there were any defects in the diving suit used by Mitchell, they were patent defects open to casual observation, and that the defendant was not responsible for injuries received through such defects, which were equally open to the observation of Mitchell, he being a diver, as to the defendant, and if Mitchell failed to observe the defects he was guilty of contributory negligence that proximately contributed to his death.

The court denied the motion, and the assignments of

error covering the ruling of the court are fully discussed in the plaintiff in error's brief.

We think the court erred in refusing to grant the defendant's motion and direct a verdict.

Chapter 6220, Acts of 1911, amending Section 1496 of the General Statutes of 1906, provides: "Upon the trial of all cases at law in the several courts of this State, the Judge presiding on such trial shall charge the jury only upon the law of the case; that is upon some point or points of law arising in the trial of said cause. If, however, after all the evidence shall have been submitted on behalf of the plaintiff in any civil case, it be apparent to the Judge of the Circuit Court, County Court or Court of Record that no evidence has been submitted upon which the jury could lawfully find a verdict for the plaintiff, the Judge may then direct the jury to find a verdict for the defendant."

This question is thus presented: "was there evidence upon which the jury could lawfully find a verdict for the plaintiff?"

The common law doctrine of contributory negligence,— except in the case of employes of railroad companies, and persons engaged in certain hazardous occupations,—is in force in this State. The deceased was not an employee of a railroad company and as diving is not one of the hazardous occupations enumerated in Chapter 6521 Acts of 1913, and as the testimony is uncontroverted that the barge from which Mitchell dived to his death was not propelled by steam, the business in which he was engaged does not come within the provisions of that statute. In the consideration of this case we must therefore be governed by the common law rule, and it is too well settled to require elaboration, that where an employee is guilty of negligence that contributes proximately to his injury,

he cannot hold the master liable for such injury. Coronet Phosphate Co. v. Jackson, 65 Fla. 170, 61 South. Rep. 318. In South Florida R. Co. v. Weese, 32 Fla. 212, 13 South. Rep. 436, this court said: "But the law is well settled that a master must not expose his servant when acting in the line of employment to dangers and hazards against which he may be protected by reasonable care and diligence on the part of the master. Among the positive duties resting upon the master to the servant is the obligation to exercise such reasonable care as prudence and the exigencies of the situation require in providing the servant with safe machinery and suitable instrumentalities, and a reasonably safe place in which to work. The negligence of the master in this respect is not one of the perils or risks assumed by the employee in his contract of employment, and he has the right to insist that the master shall strictly comply with his obligation in this respect. *    *    *

"But while the rule just announced is clearly established, it is also well settled that it is a complete answer to claim for damages resulting from a failure to furnish suitable instrumentalities and a safe place to work, that the injured servant had full knowledge of the situation, and engaged in the employment or continued therein without objection or protest and without any promise or assurance on the part of the employer to provide better. There is some conflict of authority on this point, but we think it can be safely stated that the prevailing judicial view is, that where a servant voluntarily engages in a service for another and has full knowledge that the instrumentalities he is to use and the situation in which the service is to be performed are dangerous, and the danger therefrom is apparent, and he makes no protest and his employer does not mislead

him in any way as to these matters, he assumes the risk ordinarily incident to that employment, and cannot recover for injuries resulting therefrom." In the case of Florida Cent. & P. R. Co. v. Mooney, 40 Fla. 17, 24 South. Rep. 148, the court said: "The servant in the performance of his duties is bound to exercise ordinary care, or that degree of care which prudent persons usually exercise under similar circumstances, and if he is injured by failure to exercise such care, his master is not liable." See also Flowers v. Louisville & N. R. Co., 55 Fla. 603, 46 South. Rep. 718; German-American Lumber Co. v. Brock, 55 Fla. 577, 46 South Rep. 740; Southern Turpentine Co. v. Douglass, 61 Fla. 424, 54 South. Rep. 385.

At the close of the plaintiff's testimony, it was uncontroverted that the diving suit had the appearance of having been worn considerably and had had hard usage. This should have warned the plaintiff and defendant of the necessity of an inspection of it, but neither did so. Mitchell was a diver, an occupation which requires skill and experience. From the very nature of his calling, he must have known the hazards incident to it, among which are drowning, or being otherwise asphyxiated because of defects in the suit, or the air pump, or hose, or in the adjustment of its parts, in the valves for the outlet of air, or mishaps from insufficent weights or their improper adjustment. The diving suit used by Mitchell did not belong to him or to the Atlas Dredging Company, but to the Edwards Construction Company. From this, we may assume that neither Mitchell nor the defendant knew anything of its condition, and that it was the duty of both to have examined it to see if it were safe to use it. But the failure of the defendant to perform its duty, did not relieve Mitchell from his duty to observe defects which rendered it unsafe, which were patent—so patent,

that they were observed and commented on by bystanders.

The plaintiff's case rests on the theory that Mitchell's death was caused by reason of these patent defects in the suit. No question of inexperience, or directions to incur extra hazards, or lack of knowledge of the danger incident to using a diving suit, particularly one as imperfect as the testimony discloses this one to have been, is presented here. The occupation of a diver using a diving suit and apparatus, is recognized as one requiring skill and experience, carrying with it a knowledge of what constitutes a safe suit and apparatus, and a ready ability to detect their defects. This knowledge and skill peculiarly imposes on a diver, the duty of carefulness, the disregard of which is negligence.

The defendant was entitled to a directed verdict, and the denial of his motion is error, unless the error was cured by subsequent testimony. We do not think it was.

The testimony showing Mitchell's contributory negligence was strengthened by the plaintiff's witness Stafford, who testified after the court had denied the defendant's motion for a directed verdict, that he saw the hole in the seam of the suit, and that it was big enough to put two fingers through. He said if a person "had hold of that suit and couldn't see that hole in it, they couldn't see a brick wall ten feet off. Anybody that wasn't blind couldn't help seeing it."

It is uncontroverted that Mitchell went after the diving suit himself on the day he lost his life; that there were two suits available and he selected the best one; he picked out the dress, the pump, the helmet, the shoes, the life-line and everything that went with the outfit; he got some men to help use the pump and took them to the barge from which the diving was done, and before putting on the suit he examined the pump, the hose, the

suit, the breast plate and everything; that several persons on the barge with Mitchell saw the defects in the suit before Mitchell put it on; that they were plainly visible, and as one of the plaintiff's witnesses said, if a man "had hold of that suit and couldn't see that hole in it, they couldn't see a brick wall ten feet off;" and that Mitchell's attention was actually called to the defect, and he said it was all right and did not amount to anything. These undisputed facts show conclusively to our minds that Mitchell was grossly negligent, and that he assumed dangerous risks which directly contributed to his death.

It is true the defendant sought to prove that there were no defects in the diving suit which could possibly have caused the death of Mitchell, but it is absolutely uncontroverted that if the defects existed, and if they caused his death, they were such patent defects that the failure of Mitchell to observe them, charged him with contributory negligence, which was the proximate cause of his death.

The defendant in error has cited Union Pacific Ry. Co. v. Daniels, 152 U. S. 684, 38 L. Ed. 597, 14 Sup. Ct. Rep. 756, which holds that where a motion by a defendant for a directed verdict is denied, and defendant excepts, and he then proceeds with his case and introduces testimony in his behalf, that he waives the exception, and the action of the court in denying the motion for a directed verdict cannot be assigned as error. It is not necessary for us to decide that point, as the subsequent testimony strengthened that theretofore adduced, showing the defendant's contributory negligence.

The motion for a new trial contained a number of grounds which are not necessary to notice here, as those which attacked the verdict because there was no testi-

mony to support it, entitled the defendant to a new trial, and the refusal of the lower court to grant the motion on these grounds is reversible error.

The judgment is reversed and new trial granted.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.